**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

LOUISE IRENE SCHEMENAUER,
        *Defendant-Appellant.*

No. 04-50256

D.C. No.
CR-03-02521-MLH

OPINION

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued and Submitted
December 7, 2004—Pasadena, California

Filed January 12, 2005

Before: Procter Hug, Jr., Harry Pregerson, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon

**COUNSEL**

Angela M. Krueger and Victor J. Brunkow, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Carla J. Bressler, Assistant United States Attorney, Southern District of California, San Diego, California, for the plaintiff-appellee.

**OPINION**

BERZON, Circuit Judge:

Defendant-Appellant Louise Schemenauer takes this interlocutory appeal from the district court's denial of her motion to dismiss after the jury hung at the end of her first trial. She argues that the district court erred in denying the motion because she was entitled to a judgment of acquittal under FED. R. CRIM. P. 29(a) ("Rule 29"), and that a second trial on charges that she brought illegal aliens into the United States for financial gain and without presentation would therefore violate her rights under the Double Jeopardy Clause. We dismiss this interlocutory appeal for want of appellate jurisdiction. We also decline to issue a writ of mandamus.

I.

Early in the afternoon of August 28, 2003, Louise Schemenauer attempted to re-enter the United States from Mexico at the San Ysidro, California, Port of Entry. Ms. Schemenauer was driving a 1993 Ford F-150 truck, and appeared to be the

sole occupant of the vehicle. The truck had a camper shell affixed to the bed, and did not display any license plates.

Customs and Border Protection Inspector Darrell Watson questioned Schemenauer at the border. She informed him that she had nothing to declare, and that she was returning from visiting friends in Mexico. Schemenauer told Watson that the truck belonged to her and that she had purchased it approximately one month earlier.

While briefly inspecting the truck, Inspector Watson observed a "new" speaker box in the rear area of the truck and noticed what he called a "space discrepancy" between the wall of the truck and the speaker box. He then referred the truck to secondary inspection. An X-ray of the truck identified what the Senior Immigration Inspector Knox believed to be a hidden person inside the speaker box. Knox then entered the camper shell area — which he found to be very hot — in an attempt to open the box. After several attempts, he was finally able to gain access to the compartment inside the speaker box, where he discovered Maria Ramirez Mejia, a Mexican national, hiding. Mejia was in poor condition when Knox found her, due to the excessive heat and lack of ventilation in the speaker box. After recovering, Mejia told inspectors that she had never seen Schemenauer before they were discovered at the Port of Entry, and that she understood that $3,000 was to be paid to the smugglers on her behalf once she successfully crossed the border.

Schemenauer was subsequently advised of her *Miranda* rights and made a statement to Inspector Knox maintaining that she had no knowledge that there was a woman hidden within the vehicle. Schemenauer claimed that she had the speaker box and the bench seats in the rear of the truck installed in Tijuana by an acquaintance of her friend Teresa Garcia-Ahumada; she paid the acquaintance approximately $400. Schemenauer admitted that both she and Garcia-Ahumada had previously been arrested for attempting to

smuggle illegal aliens into the United States, and that she had received over $12,000 in connection with the earlier attempts.

On September 3, 2003, a two-count indictment was filed against Schemenauer in the U.S. District Court for the Southern District of California. Schemenauer was charged with bringing in illegal aliens for financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and with bringing in illegal aliens without presentation, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii).

The jury trial began on March 16, 2004, and lasted four days. At the close of the government's case on March 17, the defense moved for a judgment of acquittal under Rule 29, which the court took under submission. On March 19, the jury, through a note, informed the court that the vote was eleven to one to convict, but that the lone juror not voting to convict was adamant and showed no signs of changing his mind.

Finding the jury hopelessly deadlocked, the district court granted the defense's motion for a new trial and set the new trial date for May 25, 2004. The defense subsequently moved to dismiss the indictment on the ground that retrial would violate Schemenauer's double jeopardy rights. The court denied the motion to dismiss, ruling that Schemenauer was not entitled to a judgment of acquittal under Rule 29 (denying the then-outstanding Rule 29 motion), and that a retrial would therefore not violate the Double Jeopardy Clause. From this ruling Schemenauer timely appeals.

## II.

**[1]** The appellate jurisdictional issue in this case is controlled by *Richardson v. United States*, 468 U.S. 317 (1984), a case presenting, as here pertinent, facts indistinguishable from those in this case. In *Richardson*, the defendant had sought a judgment of acquittal at the close of the prosecu-

tion's case-in-chief and again before submission of the case to the jury. Both times, the motion was denied. The jury subsequently deadlocked on all but one of the charges against him, and the district court issued an order providing for a new trial on those counts. *Id*. at 318-19.

**[2]** The Supreme Court held that it had jurisdiction to consider Richardson's claim that such an order violated his double jeopardy rights, holding that the claim was at least "colorable," and that the government's policy arguments to the contrary were ultimately unavailing. *See id*. at 321-22. On the merits, however, the Court found Richardson's double jeopardy claim unconvincing. Distinguishing *Burks v. United States*, 437 U.S. 1 (1978), the Court noted that, in the context of *interlocutory* review, *Burks* did not require appellate courts to reach claims concerning sufficiency of the evidence at the first trial: "Where, as here, there has been only a mistrial resulting from a hung jury, *Burks* simply does not require that an appellate court rule on the sufficiency of the evidence because retrial might be barred by the Double Jeopardy Clause." 468 U.S. at 323. Even though Richardson filed Rule 29 motions both before and after the mistrial, the Court concluded that, "[r]egardless of the sufficiency of the evidence at petitioner's first trial, he has no valid double jeopardy claim to prevent his retrial." *Id*. at 326.

**[3]** In a critical footnote, *Richardson* foreclosed jurisdiction over any future interlocutory appeal raising a sufficiency-of-the-evidence/double jeopardy claim of precisely the same variety as the one in *Richardson*:

> It follows logically from our holding today that claims of double jeopardy such as petitioner's are no longer "colorable" double jeopardy claims which may be appealed before final judgment. A colorable claim, of course, presupposes that there is some possible validity to a claim. Since no set of facts will support the assertion of a claim of double jeopardy

like petitioner's in the future, there is no possibility that a defendant's double jeopardy rights will be violated by a new trial, and there is little need to interpose the delay of appellate review before a second trial can begin.

*Id*. at 326 n.6 (citations omitted). Footnote 6 in *Richardson* squarely forecloses our interlocutory jurisdiction to consider Schemenauer's appeal. *See, e.g.*, *United States v. Jimenez Recio*, 371 F.3d 1093, 1104 (9th Cir. 2004) ("*Richardson* also held that appellate courts may no longer exercise jurisdiction over interlocutory insufficiency appeals taken before a second trial has begun.").

*United States v. Szado*, 912 F.2d 390 (9th Cir. 1990), is not to the contrary. In *Szado*, the defendant directly appealed his conviction before a magistrate judge on several grounds, including sufficiency of the evidence. *Id.* at 390. The district court, sitting in an appellate capacity, reversed the conviction and ordered a new trial without reaching the defendant's sufficiency-of-the-evidence claims. *Id.* at 390-91. The defendant then sought interlocutory review in this court, arguing that a retrial would violate double jeopardy. *Id*. at 391. Following *Richardson*'s discussion of the collateral order exception to the final judgment rule, we exercised jurisdiction over the appeal, finding defendant's claim that he was entitled to a ruling in the district court on the sufficiency of the evidence "colorable" (and, indeed, ultimately meritorious). *See id.* at 392.

Schemenauer attempts to fit this case within *Szado*'s footprint by arguing that she too has raised a "colorable" double jeopardy claim different from the one in *Richardson* — *viz.*, whether the district court erred by denying the Rule 29 motion on the basis of all of the evidence presented at trial, rather than considering only the evidence in the record when the motion was first made. The district court in *Szado*, however, failed to reach the sufficiency-of-the-evidence claim on

appeal of a final judgment of conviction entered by a magistrate judge. The conclusion that the double jeopardy claim in *Szado* was colorable reflects our decisions holding that appellate courts should consider sufficiency-of-the-evidence claims on direct appeals of final judgments, not precedents concerning the appropriate way to decide a Rule 29 motion. *See, e.g.*, *United States v. Bishop*, 959 F.2d 820, 828-29 (9th Cir. 1992) (collecting cases and citing *Burks*, 437 U.S. 1).

**[4]** The *Bishop* line of cases is inapposite here. As in *Richardson*, Schemenauer's interlocutory appeal follows the district court's declaration of a mistrial after the jury deadlocked and its subsequent denial of her Rule 29 motion. Schemenauer claims that the district court erred by considering all of the evidence at the time it denied her Rule 29 motion, instead of only that evidence in the record at the time the motion was made. The district court *did* rule on the motion, however, rather than declining to do so. Consequently, even if Schemenauer is correct concerning the district court's Rule 29 error, her argument goes to the merits of her Rule 29 appeal, not to whether her double jeopardy claim is sufficiently "colorable" to create interlocutory appellate jurisdiction. Instead, her appeal presents precisely the type of substantive double jeopardy claim held "no longer 'colorable'" by the *Richardson* Court. 468 U.S. at 326 & n.6. We consequently lack interlocutory jurisdiction under § 1291.

## III.

**[5]** The question remains whether we should issue a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651. Mandamus permits an interlocutory appellate remedy where none otherwise exists. *See, e.g.*, *Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 124 S. Ct. 2576 (2004). *Bauman v. United States District Court*, 557 F.2d 650, 654-55 (9th Cir. 1977), sets out the criteria we apply in determining whether to issue a writ of mandamus. Of critical importance is the third factor identified in *Bauman*, the existence of clear error as a matter

of law. *See Gallo v. U.S. Dist. Court for the Dist. of Ariz.*, 349 F.3d 1169, 1177 (9th Cir. 2003), *cert. denied*, 124 S. Ct. 2420 (2004). We therefore view the evidence in the light most favorable to the government and ask whether it is quite clear that *no* reasonable juror could have found the elements of each charge beyond a reasonable doubt. *See United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002).

## A.  Count I: 8 U.S.C. § 1324(a)(2)(B)(ii)

Count I of Schemenauer's indictment charged her with violating 8 U.S.C. § 1324(a)(2)(B)(ii) by bringing an illegal alien into the United States "for the purpose of commercial advantage or private financial gain." Schemenauer's central argument on the merits of her sufficiency-of-the-evidence claim is that the government failed to introduce sufficient evidence at trial establishing that she intended to receive a "commercial advantage or private financial gain" when she committed the underlying offense.

The facts here, however, are at least as strong as those found sufficient on this same issue in *United States v. Angwin*, 271 F.3d 786 (9th Cir. 2001), in which we held that:

> The statute does not require evidence of an actual payment or even an agreement to pay. It merely requires that the offense was done for the purpose of financial gain. Given [the smuggled alien's] testimony that he expected that he would have to pay for his transportation once he arrived in Los Angeles, the substantial evidence of the defendant's guilt, and the lack of any other possible explanation for Angwin's conduct, the evidence was more than sufficient for a rational jury to conclude beyond a reasonable doubt that Angwin committed the offense for the purpose of private financial gain.

*Id*. at 805; *accord. United States v. Yoshida*, 303 F.3d 1145, 1152 (9th Cir. 2002).

In this case, the government introduced evidence establishing that (1) the smuggled alien expected that someone would be paid $3,000 for her transportation; and (2) Schemenauer knew that Garcia-Ahumada, who had arranged her trip to Mexico and the installation of the speaker box (for $400), had previously been involved in smuggling aliens for financial gain, so she had reason to expect that Garcia-Ahumada was being paid this time as well. No explanation for Schemenauer's participation in a revenue-producing scheme was suggested other than an intent to share in the payments to be made. Under *Angwin*, the district court did not commit clear error in concluding that the evidence was sufficient.[1]

## B.   Count II: 8 U.S.C. § 1324(a)(2)(B)(iii)

Count II of the indictment charged Schemenauer with violating 8 U.S.C. § 1324(a)(2)(B)(iii), which makes it a separate offense knowingly to bring an alien into the country when "the alien is not upon arrival immediately brought and presented to an appropriate immigration officer at a designated port of entry." Schemenauer's argument on this count (an argument she also proffers for count I) is that the government failed to introduce sufficient evidence that she knew an illegal alien was hiding in the speaker box and so failed to prove the requisite specific intent. We disagree.

The evidence introduced at trial on this knowledge issue was sufficient. The nature of the speaker box and the heat in the camper shell would have required an expeditious retrieval of the smuggled alien from the compartment once the truck crossed the border. There was also evidence that the smug-

---

[1]The government maintains that the statute does not require that Schemenauer intended to receive a personal financial gain or commercial advantage *for herself*. Because there was sufficient evidence under *Angwin* to demonstrate that Schemenauer had the purpose of attaining financial gain or commercial advantage for herself rather than for someone else, we need not and do not address the government's alternative argument.

glers were not paid in advance. A reasonable juror could therefore have inferred that the driver would have had to have known of the alien's presence; otherwise, the driver may not have delivered the alien alive, and the smugglers would not have been paid. Also, Schemenauer owned the truck, and evidence was introduced under FED. R. EVID. 404(b) with regard to her knowledge, indicating that Schemenauer and Garcia-Ahumada had knowingly worked together in smuggling operations before. Given this evidence, the district court did not commit clear error in concluding that a reasonable juror could infer that Schemenauer knew that there was an illegal alien hidden in the speaker box.

**[6]** As there was no clear error concerning the sufficiency-of-the-evidence issue, we will not issue a writ of mandamus. *See Gallo*, 349 F.3d at 1177.

**DISMISSED.**