**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

YAMINA ABIGAIL MUNOZ,
        *Defendant-Appellant.*

No. 04-50086

D.C. No.
CR-03-1041-JTM

OPINION

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, District Judge, Presiding

Argued and Submitted
February 18, 2005—Pasadena, California

Filed June 14, 2005

Before: A. Wallace Tashima and Kim McLane Wardlaw,
Circuit Judges, and Raner C. Collins,* District Judge.

Opinion by Judge Tashima

*The Honorable Raner C. Collins, United States District Judge for the District of Arizona, sitting by designation.

7031

**COUNSEL**

Steven F. Hubachek, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Lawrence E. Spong, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

**OPINION**

TASHIMA, Circuit Judge:

Yamina Abigail Munoz appeals her convictions under 8 U.S.C. § 1324(a)(2)(B)(ii) & (iii) for two counts of bringing illegal aliens to the United States for financial gain, and two counts of bringing illegal aliens to the United States without presentation to an immigration officer. Munoz argues that the district court erred by giving a jury instruction that relieved the government of its burden of proving one of the elements of the financial gain offenses, by denying her motion for acquittal when the government failed to prove that the aliens found in her car lacked permission to "come to," as opposed to "enter," the United States, and by allowing the government to elicit testimony regarding a border inspector's reasons for referring Munoz to secondary inspection. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm the district court's denial of Munoz's motion for acquittal and its challenged evidentiary ruling, but reverse Munoz's convictions on the two pecuniary gain counts, and remand for further proceedings.

## I. BACKGROUND

At approximately 5:45 a.m. on April 2, 2003, Munoz and her two young children arrived at the San Ysidro, California, Port of Entry in a Ford minivan and applied for admission into the United States. Munoz told Inspector Jimenez, the primary inspector, that she was a United States citizen and that she had been visiting her aunt in Tijuana. She also stated that the van she was driving belonged to her aunt and that she planned on visiting her uncle in the United States. Jimenez noticed that Munoz was sweating despite the cool weather, that she was avoiding direct eye contact, and that her answers were very brief. Jimenez's inspection of the van revealed that it appeared to have a nonfactory addition, a black plastic cover along the bottom of the vehicle. Jimenez then referred

Munoz to secondary inspection. As Jimenez escorted Munoz to secondary inspection, she became aggressive, repeatedly asking Jimenez what the problem was and saying "you must be new, why are you giving me attitude."

Secondary inspection revealed a compartment under the van's rear floorboard that contained two Chinese nationals (the "aliens"). They testified that they lacked permission to enter the United States, that each had paid an unidentified man for transport from Mexico into the United States, and that neither had seen Munoz before inspectors removed them from the van at the United States border.

Munoz was charged with two counts of bringing illegal aliens to the United States for financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2, and two counts of bringing illegal aliens to the United States without presentation to an immigration officer, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii). During trial, Munoz made a motion for judgment of acquittal at the conclusion of each side's case. A jury found Munoz guilty of all four counts. She was sentenced to 36 months' imprisonment on each of the pecuniary gain counts, and 21 months' imprisonment on each of the two remaining counts, with all sentences to run concurrently.

## II.   DISCUSSION

### A.  Jury   Instruction   Regarding   Financial   Gain Offenses

Munoz first argues that the district court erroneously gave a jury instruction that relieved the government of its burden of proof on one element of the financial gain offenses. We review de novo whether a jury instruction misstated an element of the charged offense. *United States v. Kaur*, 382 F.3d 1155, 1157 (9th Cir. 2004).

8 U.S.C. § 1324(a)(2)(B)(ii) provides enhanced penalties for "an offense done for the purpose of commercial advantage or private financial gain." In instructing the jury on the financial gain element of the offenses, the district court stated that "[i]t is not necessary for the government to prove the defendant was to receive the financial gain." Munoz argues that this instruction relieved the government of its burden of proof in that it allowed the jury to convict her without finding that she had the requisite intent to benefit financially from transportation of the aliens.

The government argues that the instruction correctly stated the law because the statute does not require proof that *Munoz* was to receive any financial gain. It contends that § 1324(a)(2)(B)(ii) requires only that the defendant brought an alien to the United States for the purpose of *some person's* private financial gain. It is thus unnecessary, in its view, to prove that Munoz intended to derive any financial gain for herself. The government goes on to argue that, even if the jury instruction was incorrect, any error was harmless.

**[1]** We agree with Munoz that the statute requires the government to prove that she intended to derive a financial benefit from transport of the aliens. Our previous cases touching on this issue, while not requiring the government to prove an actual payment or agreement to pay the defendant, have assumed that the statute requires proof that the defendant intended to reap a financial benefit from the alien-smuggling transaction. *See United States v. Yoshida*, 303 F.3d 1145, 1152 (9th Cir. 2002); *United States v. Angwin*, 271 F.3d 786, 805 (9th Cir. 2001); *United States v. Dixon*, 201 F.3d 1223, 1230-32 (9th Cir. 2000); *cf. United States v. Schemenauer*, 394 F.3d 746, 751 (9th Cir. 2005) (declining to address the question of whether § 1324(a)(2)(B)(ii) requires that the offense be done for the purpose of financially benefitting the defendant herself). Although another of our cases, *United States v. Tsai*, 282 F.3d 690 (9th Cir. 2002), approved a § 1324(a)(2)(B)(ii) conviction based on intent financially to

benefit someone other than the defendant, *Tsai* was an aiding and abetting case. In that context, it correctly relied upon a defendant's intent to aid and abet another as a principal in achieving financial gain. *Id.* at 697. As Munoz points out, the government here expressly declined to prosecute her under an aiding and abetting theory. We hold that, in order to impose § 1324(a)(2)(B)(ii)'s enhanced penalties on a defendant prosecuted as a principal, the government must prove that she intended to derive a financial gain from the transaction.[1]

[2] In the circumstances of this case, the challenged instruction effectively relieved the government of its burden of proof

---

[1]The government points to a Seventh Circuit case and a district court case construing 17 U.S.C. § 506(a), which criminalizes willful copyright infringement "for purposes of commercial advantage or private financial gain," in support of its interpretation of § 1324(a)(2)(B)(ii). In *United States v. Cross*, a video store employee convicted of violating, and conspiring to violate, § 506(a) argued that insufficient evidence supported her conviction because the government failed to prove that she realized a commercial advantage or private financial gain. 816 F.2d 297, 301 (7th Cir. 1987). The Seventh Circuit held that "[a] conviction under 17 U.S.C. § 506(a) does not require that a defendant actually realize either a commercial advantage or private financial gain. It is only necessary that the activity be for the purpose of financial gain or benefit." *Id.* The district court in *United States v. Stolon* held that a defendant was properly convicted despite the government's admission that he did not personally profit from the infringement at issue. 555 F. Supp. 238, 239-40 (E.D.N.Y. 1983). The court reasoned that it was not necessary for the commercial advantage or private financial gain to flow to each co-defendant individually. *Id.* at 240.

Both of these cases involved several defendants, some of whom clearly realized commercial advantage or private financial gain. In *Cross*, the defendant was convicted of conspiracy in addition to the substantive offense, 816 F.2d at 299-301, and in *Stolon,* the court concluded that the defendant could have been convicted as an aider and abettor, 555 F. Supp. at 240. Both cases thus fall under *Tsai*'s reasoning that an aider and abettor need only intend to further a principal's intent to reap financial gain. *See Tsai*, 282 F.3d at 697. They do not support the government's position that in a case like this one, in which only Munoz was charged and prosecuted as a principal, a defendant can be convicted without evidence that she intended financially to benefit from the offense.

on the financial gain element of the offenses. The instruction implies that proof of any person's financial gain in connection with the alien's transport will satisfy the financial gain element of the offense. The record indicates that both the trial court and the prosecutor understood this to be the case. The instruction thus misstates the financial gain element of the offense in that the jury could interpret it, as the district court and the prosecutor did, to allow conviction without proof that Munoz had the requisite intent to derive a financial benefit. Accordingly, the district court erred in giving the instruction because it effectively eliminated an element of the offense.

[3] Finally, we agree with Munoz that the erroneous jury instruction was not harmless. A jury instruction misstatement that omits an element of the offense is a constitutional error subject to harmless error review. *Neder v. United States*, 527 U.S. 1, 8-13 (1999). A district court's failure properly to instruct the jury on an element of the offense is harmless if we can "conclude that it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' " *United States v. Shryock*, 342 F.3d 948, 986 (9th Cir. 2003) (quoting *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1197 (9th Cir. 2000) (en banc)); *see also Neder*, 527 U.S. at 15-16. Here, we cannot conclude beyond a reasonable doubt that a rational jury would have convicted Munoz of the financial gain offenses absent the erroneous instruction because the instruction deprived her of the opportunity of arguing to the jury regarding her lack of pecuniary intent. Given that there was no evidence that Munoz ever received or would have received money in connection with the aliens' transport, she may have been able to convince a properly instructed jury that reasonable doubt existed as to her intent. Therefore, the erroneous instruction was not harmless error.

[4] Accordingly, we reverse Munoz's conviction on the two financial gain counts.

## B.   Denial of Motion for Acquittal

Munoz next challenges the district court's denial of her motion for acquittal, arguing that the government failed to prove that the aliens found in the van she was driving lacked permission to "come to," as opposed to "enter," the United States. This lack of proof, in her view, renders the evidence against her insufficient to sustain her convictions.

We review de novo a sufficiency of the evidence challenge properly preserved by a defendant's motion for acquittal. *United States v. Karaouni*, 379 F.3d 1139, 1141 (9th Cir. 2004). We must determine whether, " 'viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* at 1142 (quoting *United States v. Booth*, 309 F.3d 566, 574 n.5 (9th Cir. 2002)).

### 1.   "Come to" Versus "Enter" the United States

**[5]** Section 1324(a)(2) requires the government to prove that Munoz brought aliens to the United States "knowing or in reckless disregard of the fact that [the] alien[s] ha[d] not received prior official authorization to come to, enter, or reside in the United States." 8 U.S.C. § 1324(a)(2) (2004). Munoz offers a proposed construction of the phrase "come to" the United States and argues that, while the government proved that the aliens lacked permission to enter the United States, it failed to prove that they lacked permission to come to the United States.

**[6]** The Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, § 112, 100 Stat. 3539 (1986) ("IRCA"), expanded the reach of 8 U.S.C. § 1324(a). Prior to IRCA, § 1324(a) criminalized "bring[ing] into or land[ing] in the United States" any alien "not duly admitted by an immigration officer or not lawfully entitled to enter or reside within

the United States." *See United States v. Aguilar*, 883 F.2d 662, 671-72 n.2 (9th Cir. 1989), *superceded by statute as stated in United States v. Gonzales-Torres*, 309 F.3d 594, 599-600 (9th Cir. 2002), *cert. denied*, 538 U.S. 969 (2003). Our § 1324(a) case law required proof that the alien was physically present in the United States and free from official restraint, *i.e.*, that the alien had "entered" the United States, as that term is understood in the immigration context. *Id.* at 680-82; *see also Gonzales-Torres*, 309 F.3d at 598 (explaining the official restraint doctrine). IRCA amended § 1324(a), replacing the words "brings into" with the words "brings to" in order to overrule precedent that required an alien's entry to sustain a smuggling conviction. *Id.* at 599. Under the current version of § 1324(a), a smuggling conviction does not require proof of an alien's entry. *Id.* at 599-600.

IRCA also changed the requisite status of a smuggled alien under § 1324(a). The government previously had to demonstrate that the alien was "not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States." *See Aguilar*, 883 F.2d at 671-72 n.2. The post-IRCA § 1324(a)(2) requires that the smuggler act "knowing or in reckless disregard of the fact that" the alien had "not received prior official authorization to come to, enter, or reside in the United States." 8 U.S.C. § 1324(a)(2) (2004).

**[7]** The parties disagree about the appropriate construction of the phrase "come to" the United States. Munoz appears to contend that to "come to" the United States means to approach the United States border from within another country without actually crossing the border. The government's argument implies that to "come to" the United States means to cross the border into the United States with or without official restraint, *i.e.*, to cross the border so as to be physically present in the United States whether or not one has actually "entered." Munoz's interpretation is problematic because, as the government points out, an alien does not need prior official authorization to approach the United States border. The

government's construction comports with congressional intent to remove the official restraint doctrine as a hurdle to criminal liability for alien smuggling. *Cf. United States v. Hernandez-Garcia*, 284 F.3d 1135, 1137-39 (9th Cir. 2002) (recognizing a distinction between "coming to" and "entering" the United States that renders the official restraint doctrine inapplicable to a § 1324(a)(1)(A)(ii) alien transporting offense). We therefore hold that an alien "comes to" the United States when the alien crosses the border into the United States regardless of whether he or she is under official restraint.[2]

## 2. Sufficiency of the Evidence

[8] Munoz could have the state of mind required by § 1324(a)(2) only if the aliens found in the van she was driving did not have the prior official authorization specified in the statute. Her sufficiency challenge thus raises the question of whether the evidence presented would allow a rational jury to conclude that the aliens lacked prior official authorization to come to, enter, or reside in the United States. *See Karaouni*, 379 F.3d at 1142.

[9] We disagree with Munoz's contention that the government failed to present evidence that would allow a rational jury to conclude that the aliens lacked permission to "come to," as opposed to "enter," the United States. Each alien testified to a lack of permission to *enter* the United States. Both testified regarding payments they made to a man who agreed to transport them to the United States, and both were found

---

[2]We reject Munoz's argument that authorization to "come to" the United States is the only relevant authorization in a case like this one. Section 1324(a)(2) applies to those who act "knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, *or* reside in the United States." 8 U.S.C. § 1324(a)(2) (2004) (emphasis added). Thus, the government must prove that a § 1324(a)(2) defendant acted in reckless disregard of the fact that an alien did not have official authorization to do any of the three specified activities.

by secondary inspectors hiding in a compartment concealed beneath the floorboard of the van that Munoz was driving. While they did not explicitly state that they lacked permission to *come to* the United States, the aliens' actions in paying to be smuggled across the border and hiding in a secret compartment in a vehicle attempting to cross the border certainly support an inference that neither had received such permission. Munoz points to no evidence suggesting otherwise. A reasonable jury could thus conclude, based on their testimony and behavior, that the aliens had not received prior official authorization to come to, enter, or reside in the United States.

**[10]** Because sufficient evidence supports the jury's conclusion that the aliens did not have prior official authorization to come to, enter, or reside in the United States, the district court properly denied Munoz's motion for acquittal.

### C. Testimony Regarding Reasons for Referral to Secondary Inspection

Finally, Munoz argues that the district court erroneously allowed the government to elicit testimony regarding Jimenez's reasons for referring Munoz to secondary inspection. We review for abuse of discretion a district court's decision to admit evidence challenged under Federal Rule of Evidence 403. *United States v. Montgomery*, 384 F.3d 1050, 1061 (9th Cir. 2004).

In response to a question asking why she referred Munoz to secondary inspection, Jimenez testified as follows:

> I had a couple of reasons. One, I observed her behavior; to me she appeared nervous; the fact that she did not or was not the registered owner of the vehicle; and three, which was the most important one, was the fact that the plastic cover in the bottom of the van sat very low and it was a nonfactory part to that

vehicle that I believed should have been, you know, furtherly [*sic.*] inspected.

Munoz objects to the district court's admission of this testimony, claiming it was irrelevant and prejudicial.

**[11]** While Munoz is correct in observing that Jimenez's state of mind was not at issue because Munoz did not challenge the decision to refer her to secondary inspection, admission of the testimony was nevertheless appropriate. The inspector's observations were relevant circumstantial evidence of Munoz's state of mind and the explanation of her reasons for referral gave the jury context in which to assess the significance of Munoz's subsequent behavior towards her. *See United States v. Gutierrez-Espinosa*, 516 F.2d 249, 250 (9th Cir. 1975) ("The facts observed by the customs agent (the new paint job on the appellant's car, the strong odor of room deodorizer, the trembling of appellant's hands) were relevant circumstantial evidence of appellant's knowledge of the presence of the marijuana in the vehicle. Even though the agent's state of mind was not itself relevant, his testimony that he referred appellant for secondary inspection was admissible and his statement that he took this action because of the facts observed was self-evident and surely harmless."). Jimenez had already testified as to each of the observations summarized in the challenged testimony and, as in *Gutierrez-Espinosa*, her statement that these observations formed the basis for her referral to secondary inspection was "self-evident and surely harmless." *Id.*

Munoz cites *United States v. Dean*, 980 F.2d 1286 (9th Cir. 1992), and *United States v. Nielsen*, 371 F.3d 574 (9th Cir. 2004), for the proposition that an agent's motives in performing investigative tasks are irrelevant. These cases are readily distinguishable, however, in that they both involve hearsay statements admitted in violation of the defendant's Confrontation Clause rights. Munoz raises no such objection to Jimenez's testimony.

**[12]** The district court did not abuse its discretion in admitting the challenged testimony.

## III.   CONCLUSION

Based on our rejection of Munoz's challenge of the denial of her motion for a judgment of acquittal and her evidentiary challenge, we affirm the two-count conviction for bringing illegal aliens to the United States without presentation to an immigration officer, but reverse Munoz's two-count conviction for bringing an alien into the United States for the purpose of private financial gain, and remand those two counts for a new trial. Whether or not the government chooses to retry Munoz on the financial gain counts, we vacate the sentence on the affirmed counts and remand those counts for resentencing so that the district court can exercise its sentencing discretion in light of these changed circumstances and in light of *United States v. Booker*, 125 S. Ct. 738 (2005). *See also United States v. Ameline*, No. 02-30326, slip op. at 29 (9th Cir. Jun. 2, 2005).

**AFFIRMED in part, REVERSED in part, sentence VACATED, and REMANDED.**