# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 11, 2011

Lyle W. Cayce
Clerk

No. 09-40248

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

LUIS RUBEN ALLENDE-GARCIA

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:08-CR-01750-1

Before DAVIS, WIENER, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:[*]

Defendant Luis Ruben Allende-Garcia was convicted of two counts of transporting undocumented aliens within the United States for purpose of commercial advantage or private financial gain ("financial gain") by means of a motor vehicle. On appeal, he makes three arguments: (1) that the evidence was insufficient to support his convictions with regard to the financial gain element; (2) that the district court reversibly erred when it failed to give the jury specific instructions that the financial gain element required personal

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-40248

financial gain, and that it had to be proven beyond a reasonable doubt; and (3) that the district court committed plain error in applying two sentence enhancements to Allende-Garcia's base offense level: one for the number of aliens transported, and one for reckless endangerment.  For the reasons given below, we affirm Allende-Garcia's convictions and sentence.

## BACKGROUND

In October 2008, Allende-Garcia drove a tractor-trailer into the inspection lane at the Border Patrol checkpoint north of Laredo, Texas.  He was pulled over because a service dog alerted on the truck, and Border Patrol agents discovered three men hiding in the "windjammer," which is described in the record as being "a little scoop" in the upper section of the back of the tractor.  The men revealed that they were Mexicans who had come illegally into the United States, but refused to provide any other information.  Several hours later, an agent discovered four more aliens hiding in the cab of the truck, two men and two women.  Two of the aliens, Carlos Mario Hernandez-Lopez and his common-law wife, Maria Guadalupe Martinez-Garcia, were retained as witnesses.

Allende-Garcia was charged with two identical counts of violating 8 U.S.C. § 1324 and 18 U.S.C. § 2, one for transporting Hernandez-Lopez, and one for transporting Martinez-Garcia, for the purpose of financial gain. Section 1324(a)(1)(A)(ii) punishes a person who

> knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law.

A violation of this subsection is punishable by a maximum prison sentence of 5 years, 8 U.S.C. § 1324(a)(1)(B)(ii), unless the defendant is convicted of having committed the offense for the purpose of commercial advantage or

No. 09-40248

private financial gain, in which case the maximum sentence is increased to 10 years under 8 U.S.C. § 1324(a)(1)(B)(i).  Finally, 18 U.S.C. § 2 outlines when a defendant can be held liable as a principal for the commission of an offense against the United States:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

At trial, Hernandez-Lopez and Martinez-Garcia, the two aliens found in the cab who were retained as witnesses, testified to how they had illegally entered the country:  Hernandez-Lopez explained that he had first paid 5,000 pesos to an unnamed person in Mexico, and expected to send another payment of $2,000 to Mexico after arrival at their destination in the United States.  The two aliens were taken across the Rio Grande on a raft into the United States with several other people.  After the crossing, they were taken to a house where they stayed for several hours.  From the house, they were then taken via car to pick up two more people, the man and woman who were eventually found with Hernandez-Lopez and Martinez-Garcia in the cab of Allende-Garcia's truck, and all four people were transferred to another car. They were driven to the tractor-trailer in which they were eventually discovered.

When they arrived at the tractor-trailer, they were told to get inside, cover themselves, and not make any noise.  The four aliens entered the cab and hid under a blanket in the sleeper compartment.  When Hernandez-Lopez and Martinez-Garcia entered through the driver's side door, they saw a man sitting in the passenger seat.  Both aliens identified the man as Allende-Garcia.  Once the truck arrived at the checkpoint, the four

3

No. 09-40248

aliens lay in the sleeper compartment for several hours before being discovered by a Border Patrol agent.

Before the jury received its instructions, Allende-Garcia's attorney requested that the jury be instructed on the financial gain element of § 1324(a)(1)(B)(i). The district court said, "We'll add it in." However, although the jury verdict form asked the jury to determine whether Allende-Garcia acted for the purpose of financial gain, the jury instructions did not specifically state that financial gain had to be proved beyond a reasonable doubt. The jury instructions also did not define financial gain. Before the jury reached a verdict, Allende-Garcia's attorney submitted a Rule 29 motion for a judgment of acquittal, which was denied.

After the jury convicted Allende-Garcia on both counts, the district court ordered that a presentence report ("PSR") be prepared to assist in Allende-Garcia's sentencing. The PSR calculated Allende-Garcia's Sentencing Guidelines range as follows: it began with a base offense level of 12, pursuant to U.S.S.G. § 2L1.1(a). It then applied a three-level enhancement under U.S.S.G. § 2L1.1(b)(2)(A), for transporting six to twenty-four aliens. The PSR stated that Allende-Garcia had transported seven aliens: three in the windjammer, and four in the sleeper compartment. The PSR also applied a second enhancement, increasing the offense level to 18 pursuant to U.S.S.G. § 2L1.1(b)(6) for intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person ("reckless endangerment").[1] The basis for this enhancement was Allende-Garcia's transportation of the three aliens in the windjammer of his truck. Allende-Garcia did not object to the PSR, and thus did not object to either of the two enhancements.

---

[1] Specifically, U.S.S.G. § 2L1.1(b)(6) instructs that where reckless endangerment is involved, the offense level should "increase by 2 levels, but if the resulting offense level is less than level 18, increase to level 18."

No. 09-40248

The total offense level of 18, coupled with Allende-Garcia's criminal history category of I, produced a sentencing range of 27 to 33 months. The district court sentenced Allende-Garcia to concurrent terms of 33 months on each count. In sentencing Allende-Garcia to the upper end of the Guidelines range, the district court stated that it was influenced by the danger of hiding the three aliens in the windjammer.

## DISCUSSION

### A.

Allende-Garcia's first argument is that there was insufficient evidence to support the financial gain element of his conviction. Courts reviewing sufficiency-of-the-evidence claims ordinarily conduct a de novo review, and "'will affirm if a reasonable trier of fact could conclude the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict.'" *United States v. McCall*, 553 F.3d 821, 830 (5th Cir. 2009) (quoting *United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007)).

The government contends that Allende-Garcia's Rule 29 motion was a specific motion, and thus that the standard of review should be more deferential to the jury verdict, because the sufficiency of the evidence regarding financial gain has not been preserved for appeal. In *United States v. Herrera*, this court held that "[w]here . . . a defendant asserts specific grounds for a specific element of a specific count for a Rule 29 motion, he waives all others for that specific count." 313 F.3d 882, 884 (5th Cir. 2002) (en banc). In such cases, the reviewing court's "review is limited to determining whether . . . the record is devoid of evidence pointing to guilt." *Id*. at 885 (quoting *United States v. Delgado*, 256 F.3d 264, 275 (5th Cir. 2001)).

5

No. 09-40248

However, in *McCall*, we held that when a defendant's Rule 29 motion is general rather than specific, we still conduct a de novo review of any sufficiency-of-the evidence claim that is brought before us. 553 F.3d at 830. We explained that because the defendant's Rule 29 motion began and concluded with general statements that there was insufficient evidence to convict the defendant, it was a general motion. *Id.* The attorney first stated that the motion was being made "'on the basis that there is insufficient evidence produced . . . that McCall committed the offense alleged — either charge, either count'" and concluded by stating "[s]o basically an insufficiency of the evidence argument based on the evidence presented at trial, based on the record." *Id.* (alterations in original) (internal quotation marks omitted). Although the attorney stated, in between these general statements, that "particularly . . . the only witness to any transaction" had dubious credibility, that statement did not affect our assessment, because the credibility of the witness was "not a ground or an element" and did not "apply to a specific charge." *Id.* (internal quotation marks omitted).

In the instant case, Allende-Garcia did preserve his challenge as to the sufficiency of the evidence, because the language of his Rule 29 motion was general rather than specific:

> I move for a directed verdict, Your Honor, based on the government's failure to prove up each and every element of the crime, specifically the identity or knowledge of my client having knowledge that — first of all, that the aliens were even there.
>
> And secondly, whether or not the alienage of the people that were there. And we feel that they had [—] no rational or reasonable a jury [sic] could take this case, and therefore that it should be a directed verdict.

His attorney began by stating that the government had failed "to prove up each and every element of the crime." Although he then mentioned specific elements, given that he first said that the government had not proven "each

6

and every element of the crime," we read those grounds to be examples of such failures of proof, rather than an exhaustive list.  The attorney then concluded by saying that "no rational or reasonable . . . jury could take this case, and therefore that it should be a directed verdict," which is similar in meaning to the statement in *McCall* that the attorney was presenting "basically an insufficiency of the evidence argument based on the evidence presented at trial, based on the record."  Accordingly, we conclude that Allende-Garcia's Rule 29 motion was a general motion, and conduct a de novo review of whether there is sufficient evidence to uphold the jury's verdict with regard to the financial gain element.

We conclude that the evidence is sufficient, because there was evidence from which a reasonable jury could have inferred that Allende-Garcia acted for the purpose of financial gain.  Although there is no precedential Fifth Circuit case that speaks to what evidence is sufficient to support the financial gain element of § 1324(a)(1)(B)(i), there are two unpublished cases that are relevant to the instant case.  Unpublished cases from this circuit "are not controlling precedent, . . . [but] may be considered persuasive authority." *United States v. Johnson*, 619 F.3d 469, 473 n.3 (5th Cir. 2010); 5th Cir. R. 47.5.4.

In *United States v. Smarr*, this court held that the evidence was sufficient as to the financial gain element of § 1324(a)(1)(B)(i) because it was sufficient to show that the defendant "participated in an illegal alien smuggling operation and that members of the operation received sums of money to help the illegal aliens enter the United States illegally and travel within the United States."  207 F. App'x 499, 500 (5th Cir. 2006) (per curiam) (unpublished).

In *United States v. Durant*, this court held that the evidence was sufficient as to the financial gain element because it showed, that the

defendant drove hundreds of miles out of the way while transporting a highly perishable shipment to pick up the aliens, which could lead a reasonable jury to infer that the defendant risked the delay or loss of her shipment because transporting the aliens was financially worth that risk. 167 F. App'x 369, 370 (5th Cir. 2006) (per curiam) (unpublished). And, because two of the aliens testified that they were to pay $1000-1200 upon arrival in Houston, Texas, a jury could reasonably have inferred that the defendant "would not have been entrusted with such a valuable cargo if she had not been knowledgeable and involved in the alien-smuggling scheme." *Id.* Finally, this court held that a reasonable jury could infer that the defendant was referring to transporting aliens when she told a coworker that she expected to earn money for taking a shipment up north, and that she was the "old lady" who demanded money from the aliens for their transportation. *Id.*

The reasoning in these unpublished opinions is consistent with that of published cases from other circuits. Those cases have held that the evidence was sufficient when there was evidence that the defendant was working with a smuggling network and that someone in the network had received or would receive money. In several of those cases, the defendant's failure to put forth a non-pecuniary explanation for his actions also weighed in favor of finding that the evidence was sufficient. *See United States v. Mejia-Luna*, 562 F.3d 1215, 1219-21 (9th Cir. 2009) (evidence that the defendant waited in his vehicle at a "drop point" where the aliens had been told to wait and then allowed them climb onboard and conceal themselves before driving them toward their destination, the aliens' testimony that they were to pay an unknown person $2000 upon arrival at their destination, the consistency of that evidence with the testimony of an Immigration and Customs Enforcement agent about how smuggling groups work, and lack of explanation of non-financial motivation on the defendant's part, constituted

sufficient evidence); *United States v. Kim*, 435 F.3d 182, 185-86 (2d Cir. 2006) (evidence that smuggling network leader introduced the aliens to the defendant, that others involved in the network received or expected to receive payment, and that one alien had paid the network leader $2000 and owed another $8000 for smuggling the rest of his family, was sufficient); *United States v. Schemenauer*, 394 F.3d 746, 751 (9th Cir. 2005) (evidence that an alien expected to pay someone $3000 for her transportation into the United States and that the defendant knew that the person for whom she was driving the truck had previously smuggled aliens for financial gain, combined with lack of explanation for the defendant's participation in scheme, was sufficient); *United States v. Yoshida*, 303 F.3d 1145, 1152 (9th Cir. 2002) (evidence of the defendant's travel patterns and "identification [by a smuggling network] as the escort for the final leg of the aliens' journey," that the families of the transported aliens had paid about $50,000 each to smuggling operation, and that the defendant was stranger to and had no "benevolent reason" to assist the aliens, was sufficient); *United States v. Angwin*, 271 F.3d 786, 805 (9th Cir. 2001) (alien's testimony that he expected to pay upon arrival at destination, evidence that the defendant rented and drove a vehicle in which 14 aliens hid, evidence that he became nervous and changed his story when questioned by Border Patrol agents, and "lack of any other possible explanation" for the defendant's actions was sufficient evidence), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186, 1200 n.17 (9th Cir. 2007) (en banc).

Allende-Garcia cites to *United States v. Munoz*, in which the Ninth Circuit held that for the financial gain element to be met, a defendant must have intended to personally derive financial gain from transporting the aliens. 412 F.3d 1043, 1046 (9th Cir. 2005). However, as *Munoz* itself acknowledged, evidence such as that outlined above is sufficient to provide a

basis from which a jury can reasonably infer that a defendant acted for her or his own personal financial benefit. *Id.* (citing *Schemenauer*, 394 F.3d at 751; *Yoshida*, 303 F.3d at 1145; and *Angwin*, 271 F.3d at 786, as examples of cases where the court held that the evidence was sufficient to prove that the defendant intended to personally derive a financial benefit).

The evidence in this case was sufficient for a reasonable jury to infer beyond a reasonable doubt that Allende-Garcia transported aliens for the purpose of deriving financial gain for himself. First, there was evidence to support the inference that a smuggling network, of which Allende-Garcia was a member, transported the aliens over the border and towards their destination in the United States. The coordination and planning that was required for transporting a number of aliens, using a raft, a house, two cars, and a truck, could lead a reasonable jury to infer that a smuggling network was moving the aliens, and that Allende-Garcia participated in that network. Thus, Hernandez-Lopez's testimony that he paid 5000 pesos to someone in Mexico and expected to send another $2000 to Mexico upon arrival at his destination in the United States supports a rational inference that because others in the smuggling network were being paid, Allende-Garcia would receive a financial benefit as well. Relatedly, the fact that the aliens were expected to pay a substantial sum after arrival at their destination could lead a jury to rationally conclude that the smuggling network would only allow them to be transported by a driver (in this case, Allende-Garcia) who was knowledgeable about the operation and had a financial incentive to keep the aliens secure. In addition, Allende-Garcia did not advance at trial any alternative, non-pecuniary explanation of why he would risk being caught, losing his job, and going to prison for transporting the aliens.

No. 09-40248

Thus, we conclude that there was sufficient evidence from which a reasonable jury could infer beyond a reasonable doubt that Allende-Garcia transported aliens for the purpose of financial gain.

B.

Allende-Garcia's second argument is that the district court reversibly erred when it failed to give the jury specific instructions that the financial gain element required personal financial gain, and that it had to be proven beyond a reasonable doubt.

The jury instructions stated that Allende-Garcia was being charged with transporting Hernandez-Lopez and Martinez-Garcia, knowing or in reckless disregard of the fact that they were aliens who were unlawfully in the United States and in furtherance of such violation of the law, for the purpose of financial gain. The instructions also explained that the government had the burden of proving Allende-Garcia guilty beyond a reasonable doubt. However, in describing and defining the elements of the crime, the district court only instructed the jury on the elements of § 1324(a)(1)(A)(ii) as elements that the government had to prove beyond a reasonable doubt: that (1) the aliens had entered the United States in violation of the law; (2) the defendant knew or recklessly disregarded the fact that the aliens were in the United States in violation of the law; and (3) the defendant transported the aliens in the United States with the intent to further their presence. The district court failed to instruct the jury that the government also had to prove the financial gain element of § 1324(a)(1)(B)(i) beyond a reasonable doubt.

On the verdict form, if the jury determined that Allende-Garcia was guilty of committing the transportation offense, which consisted of the first three elements, it then had to check "yes" or "no" in answer to a question asking whether Allende-Garcia had committed the offense for the purpose of

11

No. 09-40248

financial gain. After checking that Allende-Garcia was "guilty" of committing the transportation offense, the jury checked "yes" on the question regarding financial gain.

The parties agree that the district court's failure to specifically instruct on the financial gain element constituted omission of an essential element of the charged offense. "Generally, failure to instruct the jury on every essential element of the offense is error." *United States v. Williams*, 985 F.2d 749, 755 (5th Cir. 1993). However, omission of an essential element of an offense in jury instructions does not warrant reversal if the error was harmless. *Neder v. United States*, 527 U.S. 1, 15 (1999). An error is harmless when it is "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

Allende-Garcia raises two arguments about how the district court erred in the jury instructions given. First, he argues that the failure to explain that the financial gain element refers to personal financial gain is reversible error, citing *Munoz*. We note that this circuit has not adopted the reading that the financial gain element in § 1324(a)(1)(A)(ii) refers only to personal financial gain. Assuming arguendo that the financial gain element does refer to personal financial gain, however, we conclude that the district court's error, if any, was harmless. *Munoz* is distinguishable from the instant case. In *Munoz*, the jury instructions stated that "[i]t is not necessary for the government to prove the defendant was to receive the financial gain." 412 F.3d at 1046 (alteration in original). In contrast, here, the jury instructions simply did not define financial gain. Where financial gain is not defined, "the most natural reading of the instructions given is that the defendant must benefit personally." *United States v. Armenta-Fiscal*, 185 F. App'x 585, 586 (9th Cir. 2006) (unpublished). Moreover, as we explained above, there was

No. 09-40248

substantial evidence presented at trial from which a jury could find that Allende-Garcia acted for his own personal financial gain.

Second, Allende-Garcia argues that the jury instructions and verdict form, when read together, could have misled the jury as to the government's burden of proof. Specifically, Allende-Garcia contends that because the jury instructions did not specify that the government had to prove the financial gain element beyond a reasonable doubt, and the verdict form did not specify that the jury had to find Allende-Garcia "guilty" of acting for financial gain, the jury could have been misled into thinking that the government's burden of proof regarding the financial gain element was less than that regarding the transportation offense. Accordingly, Allende-Garcia argues, the jurors may have thought they did not have to find beyond a reasonable doubt that Allende-Garcia acted for the purpose of financial gain, or that they did not have to make that finding unanimously.[2]

We agree with Allende-Garcia that the district court erred in this regard, but conclude that this error was also harmless. As we explained earlier, there was substantial evidence from which a jury could find beyond a reasonable doubt that he acted for financial gain.

Therefore, even if the jury had been properly instructed on the financial gain element, we are certain beyond a reasonable doubt that the jury would still have found that Allende-Garcia acted for the purpose of his own personal financial gain. Thus, "it appears 'beyond a reasonable doubt that the errors Allende-Garcia raises did not contribute to the verdict in his case.'" *Neder*, 527 U.S. at 15 (quoting *Chapman*, 386 U.S. at 24).

C.

---

[2] We note, however, that although the jury instructions did not explicitly state the government's burden of proof with regard to the financial gain element, they also never put forth an alternative burden of proof, such as by a preponderance of the evidence.

No. 09-40248

Finally, Allende-Garcia contests the two sentence enhancements applied by the district court: one for the number of aliens transported, and the other for reckless endangerment. Because Allende-Garcia did not object to the enhancements below, we review the application of the enhancements for plain error. *United States v. Villegas*, 404 F.3d 355, 358 (5th Cir. 2005).

> This court finds plain error when: (1) there was an error; (2) the error was clear and obvious; and (3) the error affected the defendant's substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*Id.* at 358-59 (internal quotation marks and citations omitted). In determining whether the district court erred and whether that error was plain, this court "review[s] the district court's interpretation and application of the Guidelines de novo." *Id.* at 359.

The two enhancements are both based, at least in part, on Allende-Garcia's transportation of the aliens in the windjammer. The enhancement for the number of aliens stems from Allende-Garcia's transportation of the aliens in the cab and those in the windjammer. The enhancement for reckless endangerment is based entirely on his transportation of the aliens in the windjammer. Because Allende-Garcia was not convicted of transporting any of the three aliens in the windjammer, a sentence enhancement based on their transportation could only be applied to Allende-Garcia's sentence if transporting them constituted "relevant conduct" under U.S.S.G. § 1B1.3. "Relevant conduct" includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1).

"[A] district court may find the facts relevant to a defendant's Guidelines calculation by a preponderance of the evidence*." United States v. Scroggins*, 485 F.3d 824, 834 (5th Cir. 2007).  Furthermore, "[a] district court may adopt the facts contained in a PSR without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable." *United States v. Rodriguez*, 602 F.3d 346, 363 (5th Cir. 2010) (quoting *United States v. Angulo*, 927 F.2d 202, 205 (5th Cir. 1991)); *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006).  Allende-Garcia presented no rebuttal evidence to the PSR at sentencing.

Allende-Garcia's only argument with regard to both enhancements is that he did not know that the aliens were in the windjammer, and thus that his transporting them was not a willful act that constituted relevant conduct under the Sentencing Guidelines.

The PSR assumed that Allende-Garcia knew that the aliens were in the windjammer.  The district court did not clearly err in adopting the same assumption, because there was evidence to support the inference that Allende-Garcia was in control of his truck and of who climbed onto it.  At trial, there was evidence that at 5:18 pm, Allende-Garcia left the facility of his trucking company, driving the truck with which he was caught at the Border Patrol checkpoint.  He was stopped at the checkpoint about two hours later, around 7:30 pm.  The government presented testimony that the company facility from which Allende-Garcia departed is a very secure place. The facility is monitored by security staff and surveillance cameras, and trucks coming and going can only pass through one security checkpoint that serves as the entrance and exit.  It is unlikely that the three aliens climbed into the windjammer while Allende-Garcia's truck was parked at the

company facility.  After Allende-Garcia left the facility, he was the driver of the truck, and was responsible for it until he reached the border checkpoint approximately two hours later.   Thus, the district court could reasonably have inferred that anyone who climbed into the windjammer did so with Allende-Garcia's permission.

In sum, there was an adequate evidentiary basis for the district court to adopt the PSR's assumption that Allende-Garcia knowingly transported the aliens in the windjammer.  We find no clear or obvious error.  Accordingly, we conclude that the district court did not commit plain error in applying the sentence enhancements for reckless endangerment and for the number of aliens transported.

## CONCLUSION

Because (1) the evidence was sufficient to support the jury's finding that Allende-Garcia acted for the purpose of financial gain; (2) the district court's failure to instruct the jury that the financial gain element of § 1324(a)(1)(B)(i) referred to personal financial gain, if it was error, was nonetheless harmless; (3) the district court's failure to instruct the jury that the government had to prove beyond a reasonable doubt that Allende-Garcia acted for financial gain was harmless error; and (4) the district court did not plainly err in applying either of the two sentence enhancements, we AFFIRM Allende-Garcia's conviction and sentence.

16