# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 11, 2007            Decided October 5, 2007

No. 05-3202

UNITED STATES OF AMERICA,
APPELLEE

v.

KEVIN H. POWELL, JR.,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 05cr00061-01)

———

*Neil H. Jaffee*, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was *A.J. Kramer*, Federal Public Defender.

*Patricia A. Heffernan*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese, III*, *Thomas J. Tourish, Jr.*, and *Patricia Z. Stewart*, Assistant U.S. Attorneys.

Before: HENDERSON, RANDOLPH and BROWN, *Circuit Judges*.

RANDOLPH, *Circuit Judge*: Two police officers, patrolling an area in northeast Washington, D.C., found Kevin H. Powell,

Jr. apparently unconscious, sitting behind the steering wheel of an automobile stopped in an intersection. The only serious question presented in Powell's appeal from his conviction for violating 21 U.S.C. § 841(b)(1)(B)(iii) is whether the jury had sufficient evidence to find that he possessed crack cocaine, which *United States v. Brisbane*, 367 F.3d 910 (D.C. Cir. 2004), held would certainly be enough to satisfy the "cocaine base" element of that section.[1]

The evidence, viewed in the light most favorable to the government, *see United States v. Zeigler*, 994 F.2d 845, 848-49 (D.C. Cir. 1993), showed as follows. One officer approached the automobile from the driver's side, the other from the passenger's side. One of the officers saw a plastic bag sitting on Powell's lap; in the bag was a "white-yellowish rock substance." This officer had seen crack cocaine on more than fifty occasions and had no doubt that Powell's bag contained crack. The other officer also had no doubt that the substance was crack. He testified that he encountered crack cocaine at least once a day and that it is "usually a white rocky substance, white with a tinge of yellow, a little off-white." The officers seized the bag, $2,541 in cash found on Powell, two cell phones and a fully loaded nine millimeter handgun found in the center console of the car.

The government introduced, and the court admitted as government exhibit 10, the substance recovered from Powell.

---

[1]As we explained in *Brisbane*, punishment for violating § 841 depends on the weight of drugs involved in the offense. A certain quantity of "cocaine base" will trigger much stiffer penalties than an equivalent quantity of powdered cocaine – that is, "cocaine, its salts, optical and geometric isomers, and salts of isomers." *Compare* 21 U.S.C. §§ 841(b)(1)(A)(ii)(II) & (B)(ii)(II) *with* 21 U.S.C. §§ 841(b)(1)(A)(iii) & (B)(iii).

A Drug Enforcement Administration chemist testified that when he received exhibit 10 the material was "rock-like" and "off-white" or "yellowish" in color. He identified a photograph he had taken of the substance, which showed small pebbles of various sizes. The chemist had pulverized the material to test it and found that it weighed 15.4 grams, with 83 percent consisting of cocaine base. He said that he did not identify the remaining material in the exhibit. He also testified that he did not test the material to determine whether it was smokable.

Powell makes much of the government's failure to show that exhibit 10 "contained sodium bicarbonate or any other chemical compound necessary to produce crack cocaine." Appellant Reply Br. 12. The point is well-taken but we do not believe the absence of such evidence is fatal. There are often many different ways to prove a proposition. Here, in addition to the testimony of the arresting officers and the chemist, the government called Sergeant John Brennan, who was accepted as an expert in the packaging and distribution of controlled substances, including cocaine. Sergeant Brennan explained how crack is manufactured and sold on the streets. He reviewed the photograph of the material that was taken before the chemist tested it and the chemist's report. In Sergeant Brennan's judgment, the material was crack cocaine, something he sees "every day on the street." He was certain that it was not powdered cocaine, the other form of cocaine found in Washington.

While not exactly overwhelming, we think the evidence was enough to enable a rational trier of fact to determine that exhibit 10 was crack cocaine. *See Jackson v. Virginia*, 443 U.S. 307, 317-19 (1979). The arresting officers had ample experience with crack cocaine. Their identification of Powell's material as crack cocaine was not contradicted. Nor was Sergeant Brennan's expert testimony on the subject. Other evidence,

such as a cocaine cooking kit, *United States v. Johnson*, 437 F.3d 69, 75 (D.C. Cir. 2006), or conformance to traditional sale practices, *United States v. Lawrence*, 471 F.3d 135, 139 (D.C. Cir. 2006), would have made the government's case stronger. The case would have been stronger still if a chemist or some other type of expert determined whether the vaporization point of this particular sample of cocaine base was below the known decomposition temperature of the cocaine molecule.[2]   *See* United States Sentencing Commission, *Special Report to the Congress: Cocaine and Federal Sentencing Policy* 12-13 (Feb. 1995).  But the absence of evidence along either of these lines did not undermine the force of the evidence the government did present.  We cannot say that no rational juror could have found beyond a reasonable doubt that Powell possessed crack cocaine. We therefore affirm his conviction for violating 21 U.S.C. § 841(b)(1)(B)(iii).

Powell has two further points.  The first is that the district court erred in following our decision in *United States v. Alexander*, 331 F.3d 116, 130-31 (D.C. Cir. 2003), and counting his attempted drug crimes as "serious drug offenses" under 18 U.S.C. § 924(e), which resulted in his designation as an armed career criminal subject to a mandatory minimum sentence of 15 years' imprisonment.  Powell concedes that *Alexander* controls.

---

[2]The cocaine molecule begins to decompose around 388º F, roughly the same temperature at which powder cocaine vaporizes. *See* United States Sentencing Commission, *Special Report to the Congress: Cocaine and Federal Sentencing Policy* 12-13 (Feb. 1995). When powder cocaine is vaporized, as such, the cocaine molecule decomposes, becoming pharmacologically inactive. *Id.* Cocaine base by contrast vaporizes at 208º F.  *Id.*  This lower temperature means that the substance vaporizes before the cocaine molecule decomposes. The fumes from vaporized cocaine base still contain the active cocaine molecule and inhaling the fumes will produce a high.  *Id.*

We therefore affirm the enhancement of his sentence under § 924(e). *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996).

The jury also found Powell guilty of violating 21 U.S.C. § 860(a), which enhances the sentence for drug offenses occurring within 1000 feet of a "public or private elementary, vocational, or secondary school or a public or private college, junior college, or university." As the government concedes, it did not present evidence to show that the school near the intersection where the police arrested Powell was of a type covered by § 860(a). *See United States v. Edmonds,* 240 F.3d 55, 63-64 (D.C. Cir. 2001). Powell's conviction for violating § 860(a) must therefore be vacated.[3]

*Affirmed in part, vacated in part and remanded.*

---

[3]Powell does not challenge his conviction for using or carrying a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1), or his conviction under 18 U.S.C. § 922(g)(1) for possessing a firearm or ammunition after having been convicted of an offense punishable by more than one year.