IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 19, 2008

Charles R. Fulbruge III
Clerk

No. 07-51456

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

RAFI WALI McCALL

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas

Before KING, HIGGINBOTHAM, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant Rafi Wali McCall was charged in a two-count indictment with twice distributing 50 or more grams of cocaine base ("crack") to Erma Williams and for doing so both times within 1000 feet of a school. A jury convicted McCall on both counts, finding that he violated 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 860. McCall timely appealed those convictions, advancing four reasons for his entitlement to relief: (1) The district court plainly erred when it failed to declare a mistrial sua sponte after the government elicited improper guilt-by-association evidence; (2) the district court abused its discretion when it admitted evidence of his prior crack distribution conviction and allowed Williams to testify about her prior drug transactions with McCall over the preceding

decade; (3) a reasonable jury could not have concluded beyond a reasonable doubt that he sold drugs within 1000 feet of a school; and (4) the evidence adduced at trial was insufficient to prove his guilt on either count of the indictment. We affirm McCall's convictions for twice violating §§ 841(a)(1) and 841(b)(1)(A). Finding insufficient evidence in the record for a reasonable jury to conclude beyond a reasonable doubt that McCall's distributions of crack occurred within 1000 feet of a school, however, we reverse his convictions under § 860 and remand for entry of a judgment of acquittal on the § 860 counts and for re-sentencing.

## I. FACTS AND PROCEEDINGS

On March 22, 2007, Erma Williams signed a cooperating-individual agreement with the Odessa (Texas) Police Department (the "OPD") in the hope of obtaining leniency for her husband, who had been sentenced to a lengthy prison term for his involvement in drug trafficking. She agreed, in her words, to "set up" McCall, her "longtime friend," from whom she had occasionally bought crack over the past decade. The OPD scheduled Williams to participate in a controlled buy of crack from McCall the same day that she signed up to be a cooperating individual. Williams agreed and made arrangements over the phone to purchase two ounces of crack from McCall at his home, which phone calls were recorded by the OPD and admitted into evidence at trial.

OPD detectives searched Williams and her car before she left to meet McCall. During that search of her car, OPD detectives discovered 22 grams of crack. (Williams disclaimed ownership of the crack and had not, at the time of trial, been prosecuted for its possession.) The detectives then closely observed Williams as she traveled to McCall's house, met with him in his car in the driveway, then left as planned to meet members of the OPD. At that time, she gave the detectives a substance that was later identified as 53.81 grams of crack, which she testified McCall sold to her on credit.

On March 27, 2007, the OPD gave Williams $1000 in marked bills to pay for the crack that McCall had sold to her on credit. She also attempted to make a second controlled purchase that day, but McCall was out of drugs. The next day, however, Williams went back to McCall's house, again under surveillance and again after detectives searched her and her car, this time without finding any drugs. She testified that on this occasion McCall gave her a substance that was later determined to be 57.25 grams of crack, which she turned over to OPD detectives as arranged. The district court admitted the recording of the video surveillance of Williams at McCall's house that day and also admitted a partial audio recording of the transaction.

Based on these controlled sales, the OPD obtained a warrant to search McCall's house. When the police executed the warrant on March 29, 2007, the investigating officers found that McCall had fled. The ensuing search of his house produced a digital scale with cocaine residue on it. McCall was arrested shortly after April 8, 2007 in Houston, Texas.

At trial, the following colloquy between the government prosecutor and one of the government's witnesses, OPD Detective Frederico Nayola, occurred on redirect examination:

| [Government]: | "Okay. And Ms. Williams said, the first time she met with you, that the suspected source of the crack in her car was from a Jamie McCoy, street name Snake, correct?" |
| --- | --- |
| [Detective Nayola]: | "She mentioned his name." |
| [Government]: | "Okay. In fact, Mr. McCoy has been so kind to come here and watch his friend on trial, correct?" |
| [Detective Nayola]: | "Yes, sir. He's seated in the back seat." |
| [Government]: | "And you know him and you know what he does, correct?" |

[Detective Nayola]:       "I know he sells crack cocaine."

[Government]:       "As well as some of these other people here, correct?"

The defense objected before Detective Nayola could answer the last question. The trial judge sustained the objection and gave a curative instruction, and the defense did not move for a mistrial.

Also during its direct examination of Detective Nayola, the government submitted evidence of McCall's prior crack distribution conviction over a timely defense objection based on Federal Rule of Evidence 404(b). In the course of the government's direct examination of Williams, it elicited testimony about McCall's history of drug dealing with her. In addition, the government elicited testimony from Williams about the transactions at McCall's house and from various OPD detectives involved in the two stings and the search of that house.

Regarding the distance between McCall's house and Gale Pond Alamo Elementary School, the statutorily relevant sites under 21 U.S.C. § 860, the government offered only: (1) an aerial photograph without scale,[1] which showed the elementary school and McCall's house; and (2) testimony from Detective Nayola that he had driven the streets shown in the photograph a number of times and that the school and house were, in his opinion, within 1000 feet of each other. A circle superimposed on the aerial photograph purported to show that everything within it, including McCall's house, was within 1000 feet of Gale Pond Alamo Elementary School. Detective Nayola did not create the photograph or superimpose the circle on it, however, and he could not identify or vouch for the method by which either was created, other than to say that the circle was computer generated. Although the record is not perfectly clear on this point, the

---

[1] The copy of the photograph entered in evidence has a large circle circumscribed on it, and the title of the photograph reads "GALE POND ALAMO/1000 FT BUFFER." We reproduce the photograph as an appendix to this opinion.

district court apparently admitted the photograph but excluded the circle, presumably because it was insufficiently authenticated. On appeal, the government does not contest this characterization of the district court's ruling. Accordingly, for sufficiency purposes, we must imagine the photograph without the circle on it.

After the government rested, the defense moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, which motion was denied. The government closed; McCall re-urged his Rule 29 motion; it was again denied; and the case was submitted to the jury. The jury convicted McCall on both counts of the indictment.

## II.  ANALYSIS

1.    Evidence of Guilt by Association

    A.    Standard of Review

When, as here, the defendant does not move for a mistrial, we review the failure of the district court to grant a mistrial sua sponte for plain error only.[2] To establish plain error, the defendant must show that "(1) there is an error, (2) the error is clear or obvious, and (3) the error affects his substantial rights."[3] "An error is considered plain, or obvious, only if the error is clear under existing law," whether in existence at the time of trial or announced during the pendency of the defendant's direct appeal.[4] If all three criteria are met, we may exercise our discretion to correct the error, regardless of waiver for failure to move, if the

---

[2] FED. R. CRIM. P. 52(b); United States v. Norris, 780 F.2d 1207, 1212 (5th Cir. 1986); United States v. Barcenas, 498 F.2d 1110, 1113 (5th Cir. 1974).

[3] United States v. Salinas, 480 F.3d 750, 756 (5th Cir. 2007) (internal quotation marks omitted).

[4] Id.

error "seriously affects the fairness, integrity, or public reputation of judicial proceedings."[5]

B. Merits

No reasonable prosecutor could have been unaware that the complained-of testimony elicited from Detective Nayola on redirect was inadmissible and highly prejudicial. In this and all other circuits, "a defendant's guilt may not be proven by showing he associates with unsavory characters."[6] We have held that evidence that "one is married to, associated with, or in the company of a criminal does not support the inference that that person is a criminal or shares the criminal's guilty knowledge."[7] An associate's attendance at a "friend's" criminal trial, which is a constitutional right enjoyed by savory and unsavory characters alike, is no better evidence of a defendant's guilt. Careful prosecutors presumably heed our admonition in United States v. Singleterry against attempting to obtain convictions based on guilt-by-association evidence.[8] There, we said that "[t]o appear as counsel in federal court is a privilege which may be forfeited."[9] There is no excuse for such blatant disregard of the bounds of acceptable questioning.

The precise issue presented by McCall in this appeal, however, is not whether the effort by the prosecutor to elicit guilt-by-association evidence was itself improper, but whether the failure of the district court to declare a mistrial sua sponte was plain error, irrespective of the district court's exclusion of the evidence and curative instruction. Our cases do not support a conclusion of plain

---

[5] Id. (internal quotation marks omitted).

[6] United States v. Singleterry, 646 F.2d 1014, 1018 (5th Cir. 1981).

[7] United States v. Forrest, 620 F.2d 446, 451 (5th Cir. 1980) (footnotes omitted).

[8] 646 F.2d at 1019-20.

[9] Id. at 1020.

error here. In United States v. Pando Franco, we upheld the "refusal" of a district court to order a mistrial after the government attempted to elicit similar evidence.[10] As the word "refusal" indicates, the defendant had moved for a mistrial, so our review was for abuse of discretion, a deferential standard but less deferential than plain error. In these types of cases, we consider three factors before answering the ultimate question of error, viz., whether the tainted evidence substantially affected the jury's verdict. These factors are "(1) the magnitude of the prejudicial effect of the statement; (2) the efficacy of any cautionary instruction; and (3) the strength of the evidence of the defendant's guilt."[11]

The guilt-by-association testimony in this case is undoubtedly more prejudicial than that in Pando Franco, and the curative instruction given in this case was not as efficacious as that given in Pando Franco. But the other evidence of McCall's guilt is quite strong: eyewitness testimony, corroboration from audio and video sources, law enforcement testimony, and evidence from the search of McCall's home. When that evidence is viewed in the very limited perspective of our plain error review, it trumps any differences between the relative magnitudes of the prejudicial effect (smaller) and efficacy of the curative instruction (greater) in Pando Franco and this case. We hold that the failure of the district court to declare a mistrial sua sponte was not plain error.

2.    Evidence of Extrinsic Offenses

    A.    Standard of Review

We review a decision to admit evidence of prior offenses for abuse of discretion.[12] The abuse of discretion standard is "heightened," however, when

---

[10]  503 F.3d 389, 393, 395 (5th Cir. 2007).

[11]  Id. at 395.

[12]  United States v. Arnold, 467 F.3d 880, 885 (5th Cir. 2006).

evidence is admitted under Federal Rule of Evidence 404(b),[13] because "[e]vidence in criminal trials must be strictly relevant to the particular offense charged."[14] Nevertheless, erroneous admissions under Rule 404(b) are subject to a harmless error inquiry.[15] An error is harmless when it does not affect the substantial rights of a party.[16] The government has the burden of establishing harmlessness beyond a reasonable doubt.[17]

## B. Merits

Threshold matters, such as the extrinsic character of the prior offense evidence and Rule 404(b) notice, have not been raised by the parties in this case. We therefore proceed directly to the two-step test from United States v. Beechum to determine whether extrinsic evidence of McCall's prior drug offenses and prior drug dealings with Williams was admissible.[18] "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character."[19] "Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [Federal Rule of Evidence] 403."[20]

The crime with which McCall was charged, distribution of crack, required the government to prove that he had formed a general intent to commit the

---

[13] United States v. Miller, 520 F.3d 504, 511 (5th Cir. 2008); United States v. Mitchell, 484 F.3d 762, 774 (5th Cir. 2007).

[14] United States v. Jackson, 339 F.3d 349, 354 (5th Cir. 2003) (internal quotation marks omitted).

[15] Id.

[16] United States v. Crawley, 533 F.3d 349, 353 (5th Cir. 2008).

[17] United States v. Nguyen, 504 F.3d 561, 571 (5th Cir. 2007).

[18] 582 F.2d 898 (5th Cir. 1978) (en banc).

[19] Id. at 911.

[20] Id.

crime.[21] By pleading not guilty to the charges and requiring the government to prove the elements of its case, McCall made evidence of his general intent relevant.[22] McCall's contention that his opening statement put the government on notice that he would not contest general intent and knowledge is unavailing on the relevance prong of Beechum. Even assuming that the government could have so understood, McCall had not offered "enforceable pre-trial assurances that he intend[ed] not to dispute criminal intent."[23] Thus, the government could "include such extrinsic offense evidence as would be admissible if intent were actively contested."[24] The evidence of McCall's prior crack distribution conviction is therefore relevant to his intent, an issue other than character. For the same reason, Williams's testimony about buying crack from McCall over the preceding ten years is relevant to McCall's general intent.

The government's contention that the extrinsic offense evidence is relevant to proof of absence of mistake, however, is unavailing. McCall never contended that he accidentally or mistakenly distributed crack to Williams; to allow extrinsic offense evidence as proof of the absence of conditions that McCall never contended were present would eviscerate the exceptional nature of admission

---

[21] See United States v. Manganellis, 864 F.2d 528, 539 (7th Cir. 1988). Although other circuits disagree, and our approach has been criticized, we allow the admission of extrinsic offense evidence on the question of general intent. See Vivian M. Rodriguez, The Admissibility of Other Crimes, Wrongs or Acts Under the Intent Provision of Federal Rule of Evidence 404(b): The Weighing of Incremental Probity and Unfair Prejudice, 48 U. MIAMI L. REV. 451, 460-67 & n.111 (1993).

[22] United States v. Buchanan, 70 F.3d 818, 831 (5th Cir. 1995).

[23] United States v. Webb, 625 F.2d 709, 710 (5th Cir. 1980).

[24] Webb, 625 F.2d at 710. United States v. Yeagin, 927 F.2d 798, 801-03 (5th Cir. 1991), is not to the contrary. There, in discussing the ordinary rule that an offer to stipulate will not deprive an opponent of presenting the case as he or she sees fit, we recognized that Webb created an exception for Rule 404(b) evidence. An offer to stipulate to a matter on which the admission of Rule 404(b) evidence is sought heavily influences the admissibility of such evidence for obvious reasons of prejudice. That does not detract from Webb's requirement that there be an offer to stipulate or something similar. McCall admits that he made no such offer.

under Rule 404(b).[25] Unlike intent, absence of mistake or accident need not be proved by the government unless raised by the defense. This explains why our rule that a generalized plea of not guilty puts intent at issue cannot be extended to absence of mistake or accident. When a defendant puts the government's evidence to the test by pleading not guilty, but does no more, only evidence of the elements of the crime is relevant. Again, however, the evidence of extrinsic offenses in this case was relevant to an issue in play — McCall's general intent — so we move to the next step of the test.

On the second step of Beechum, Williams's testimony about her history of purchasing crack from McCall presents no problem. Whatever prejudice is attributable to her testimony, the fact that she knew McCall well and bought crack from him — the exact crime with which he was charged in this case — on and off over the course of a decade is highly probative of his general intent in entering into the instant crack transactions with her. Any prejudice was certainly mitigated, even if not eliminated,[26] by the district court's limiting instruction given contemporaneously with the admission of the evidence, which limiting instruction the district court repeated during the jury charge.[27] The probative value of Williams's testimony far outweighs any undue prejudice.

As for the evidence of McCall's prior crack distribution conviction, the second step of Beechum presents a closer question in light of United States v.

---

[25] See, e.g., 1 MCCORMICK ON EVIDENCE § 190 (6th ed. 2006) ("Thus, if the defendant does not deny that the acts were deliberate, the prosecution may not introduce the evidence merely to show that the acts were not accidental."). By and large our cases have followed this rule, frequently citing MCCORMICK. See, e.g., United States v. Brookins, 919 F.2d 281, 285 (5th Cir. 1990) ("[T]estimony about [the defendant's] prior drug sales in that store tends to rebut any claim by [the defendant] that his presence at the store was innocent." (emphasis added)).

[26] See generally Joel D. Lieberman & Jamie Arndt, Understanding the Limits of Limiting Instructions, 6 PSYCHOL. PUB. POL'Y & L. 677 (2000) (collecting and analyzing empirical research on the effect of limiting instructions).

[27] United States v. Miller, 520 F.3d 504, 512 & n.12 (5th Cir. 2008).

Jackson.[28]  The facts of Jackson and this case are quite similar.  In Jackson, as here, "[a]t trial, [the defendant] never made any arguments based on intent.  His defense was clearly laid out to the jury in his opening statement.  His defense was simply that the government had the wrong man."[29]  As in Jackson, there is also other substantial evidence here of McCall's intent, e.g., the testimony of Williams.  The government's description of McCall as an "experienced, high level crack dealer[]" during its opening argument is analogous to the prosecutor's reference to Jackson as "local talent."[30]  There may be reason to give special attention to the second step of Beechum when evidence is relevant only to the issue of general intent, for which there will almost always be other evidence and which is at issue in almost every prosecution.

We need not reach such questions today, however, because any error in admitting evidence of McCall's prior drug conviction and prior drug dealings with Williams was harmless beyond a reasonable doubt.  The government has borne its burden that other admissible evidence, like Williams's testimony, the audio and video tapes, and the testimony of the police officers, demonstrates that McCall's substantial rights were not prejudiced.  There is ample other evidence of his guilt.  In Jackson, the case turned "heavily on the testimony of [a person with] . . . . a five-hundred dollar-a-week cocaine habit at the time . . . [who] told one FBI agent that he was using such large quantities of drugs and alcohol[] at the time . . . that he could not remember where in the state he was."[31]  That witness's testimony was riddled with inconsistencies about who was involved — including, but not limited to, whether he himself was involved in the crimes, the

---

[28]  339 F.3d 349 (5th Cir. 2003).

[29]  Id. at 355.

[30]  Id. at 356.

[31]  Id. at 358.

amount of money he had received, and the number of crimes he had committed.[32] Unlike here, no video or audio tapes were available from which the defendant could be identified, and the crimes were not carried out under the close supervision of police officers directing controlled buys.

3.    Sufficiency of the Evidence

    A.    Standard of Review

McCall moved for a judgment of acquittal on both counts of the indictment, a motion that challenges the sufficiency of the evidence. The government contends that the motion did not preserve the "within 1000 feet" issue for review, but its argument is unpersuasive. In United States v. Herrera, we wrote: "Where, as here, a defendant asserts specific grounds for a specific element of a specific count for a Rule 29 motion, he waives all others for that specific count."[33] Not so here. After the government rested and again after the government closed, McCall moved for a judgment of acquittal "on the basis that there is insufficient evidence produced . . . that [McCall] committed the offense alleged — either charge, either count." Although McCall did follow this up with "[a]nd particularly that the only witness to any transaction was Ms. Williams . . . and her credibility — is damaged," he did conclude the motion with "[s]o basically an insufficiency of the evidence argument based on the evidence presented at trial, based on the record." This is not a "specific ground[] for a specific element of a specific count." In Herrera, the defendant was charged with possessing a firearm while (1) addicted to a controlled substance or (2) an unlawful user of a controlled substance, each separate grounds for conviction under a single subsection of the statute.[34] Herrera's Rule 29 motion asserted that there was

---

[32]  Id. at 358-59.

[33]  313 F.3d 882, 884 (5th Cir. 2002) (en banc) (per curiam) (second and third emphases added).

[34]  Id.

insufficient evidence that he was addicted to a controlled substance.[35] Accordingly, we concluded that he had waived objection to the sufficiency of the evidence on the other ground, that he was an unlawful user of a controlled substance. Here, Williams's credibility is not a ground or an element; neither does it apply to a specific charge but instead to both counts of the indictment.

United States v. Phillips,[36] is similarly distinguishable. There, the defendant objected only to the sufficiency of the evidence that the loss or damage that he caused was in excess of $5000. Loss in excess of that amount was an element of the crime.

Rule 29 motions need not be specific.[37] As general language about the insufficiency of all of the evidence for all elements of all counts was used to introduce and conclude McCall's motions, the issue was preserved. Accordingly, we employ our usual de novo review of the sufficiency of the evidence.[38] We "will affirm if a reasonable trier of fact could conclude the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict."[39] The standard of review does not depend on whether the evidence presented at trial is direct or circumstantial.[40] Even though this species of review is labeled de novo, it is "highly deferential to the verdict."[41]

---

[35] Id.

[36] 477 F.3d 215, 219 (5th Cir. 2007).

[37] Huff v. United States, 273 F.2d 56, 60 (5th Cir. 1959).

[38] United States v. McDowell, 498 F.3d 308, 312 (5th Cir. 2007).

[39] Id. at 312 (internal quotation marks and ellipses omitted).

[40] United States v. Bryant, 770 F.2d 1283, 1288 (5th Cir. 1985).

[41] United States v. Gulley, 526 F.3d 809, 816 (5th Cir. 2008) (per curiam) (internal quotation marks omitted).

B.      Merits

i.      Sufficiency of the "Within 1000 Feet" Evidence

Under 21 U.S.C. § 860(a), the government was required to prove beyond a reasonable doubt that the place where McCall distributed drugs in violation of § 841(a)(1) was within 1000 feet of a school[42] or other proscribed location. The type and quantum of evidence necessary to prove the distance between the two relevant points (the school property and the site of the drug transaction) beyond a reasonable doubt has not yet been fleshed out extensively in this circuit. We have, however, touched on the sufficiency of evidence of distance for § 860 before, as in United States v. Sparks.[43] There, "a city . . . engineer[] identified an aerial

---

[42] McCall's argument under United States v. Powell, 503 F.3d 147, 149 (D.C. Cir. 2007), that the government did not sufficiently establish that the school at issue falls within one of the statutorily protected types of schools, is feckless. The mere name of the school, Gale Pond Alamo Elementary, is itself sufficient evidence for a reasonable trier of fact to conclude beyond a reasonable doubt that it is an elementary school — one of types of schools named in § 860(a). See United States v. Holland, 59 F. Supp. 2d 492, 518-19 (D. Md. 1998); cf. United States v. Brookins, 919 F.2d 281, 283-84 (5th Cir. 1990).

His next argument, that the government was required to prove that the school was public or private, and not a charter school, also fails. United States v. Bledsoe, 898 F.2d 430, 432 (4th Cir. 1990), abrogated on other grounds by United States v. Floresca, 38 F.3d 706 (4th Cir. 1994) (en banc) (limiting Bledsoe to its facts for purposes of constructive amendments), held: "All secondary schools are either publicly or privately controlled; therefore, the statute is violated by a sale within 1000 feet of any secondary school." That reasoning applies with similar force here. It is true that some states may deem charter schools neither public nor private per se, but instead a type of hybrid. If both components of the hybrid are encompassed by the statute, however, it would be perverse for their combination not to be treated similarly. Congress's intended "wide breadth" of the statute, see United States v. Clark, 67 F.3d 1154, 1161 (5th Cir. 1995), judgment vacated sub nom. on other grounds by Coffman v. United States, 519 U.S. 802 (1996), militates against such a crabbed reading, and McCall has provided no rationale for why children at charter elementary schools deserve (or need) less protection from drugs than children at purely public or private schools. The rule of lenity is no answer to Bledsoe's persuasive application of the law of the excluded middle.

[43] 2 F.3d 574, 579-80 (5th Cir. 1993). A case cited by the parties, United States v. Rojas Alvarez, 451 F.3d 320 (5th Cir. 2006), is not directly on point. The specific issue in that case was whether there must be testimony as to the precise distance between the school and the place of the drug transaction. The witnesses testified that the house was within 1000 feet of the school. The defendant argued that the government was required to show the exact distance. We rejected that argument. We did not, however, purport to examine whether a proper foundation was established for the more general "within 1000 feet" testimony. In that

14

photograph of the area encompassing the field and the nearby public school. [The engineer] testified that the photograph demonstrated that the field was located within 1,000 feet of the school."[44] According to the record, the engineer was not responsible for mapping the city, but he was responsible for street maintenance projects, commercial and residential platting, building permits and site plans, flood plain administration, and other similar engineering tasks. A reasonable trier of fact could conclude that, from his planning responsibilities and work, the city engineer was experienced with distances and with the layout and measurement of city blocks and roads. He also demonstrated his familiarity with aerial mapping of the city when he testified about how maps of the city could be made by aerial photography, the deviations to be expected in such aerial maps, and the maximum deviations in measurements that such maps would exhibit. Finally, and perhaps most importantly, the city engineer in Sparks had firsthand knowledge of how at least one of the maps used at trial had been confected, which provided him with some sense of scale. We have also sanctioned evidence from a city engineer using an official map,[45] and the Fourth

---

case, it appears from the record that at least one of the witnesses at trial was present when officers measured the distance. No distance was measured in the instant case. The officer who testified about the distance in United States v. Taylor, 254 F.3d 71, 71 (5th Cir. 2001) (per curiam) (unpublished), also, according to the record, measured the distance using an odometer. As the statute probably measures the distance as the crow flies, United States v. Watson, 887 F.2d 980, 981 (9th Cir. 1989), measurement along street paths is necessarily an overestimate of the statutorily relevant distance. In this case, however, it would be unreasonable to conclude that the only evidence Detective Nayola offered of the distance, his general experience driving around the neighborhood, constituted proof of any distance beyond a reasonable doubt. We therefore do not need to consider whether, if that evidence were sufficient, we could treat a reasonable driving estimate as necessarily an overestimate of the statutorily relevant distance. The answer is obvious in any event.

[44] Sparks, 2 F.3d at 580.

[45] Brookins, 919 F.2d at 283-84.

Circuit has sanctioned evidence from a land-survey analyst.[46] Actually pacing out the distance may suffice as well.[47]

If Sparks exemplifies what is unquestionably sufficient evidence of distance, United States v. Applewhite,[48] cited by McCall, is an example of what should be deemed insufficient. There, the police measured some distance, but they did not measure the distance from the school to the apartment where the drug transaction took place. Instead, the police measured only the distance to the address of the apartment building. The D.C. Circuit considered that evidence insufficient. The sufficiency of the evidence in the instant case depends not so much on the precision of the measurement,[49] or the plausibility of any "spatial leeway" between the government's evidence and actual proof of the 1000-foot distance,[50] but on whether there exists any evidence of any distance that is sufficiently accurate and probative to convince a reasonable trier of fact beyond a reasonable doubt. The only evidence in this record is (1) an unscaled aerial photograph of the neighborhood that depicts a part of the Odessa neighborhood where the school and McCall's house are located, and (2) Detective Nayola's imprecise and conclusional lay opinion about the distance between the two. We address each in turn.

(a)    The Aerial Photograph

Detective Nayola, through whom the aerial photograph was introduced, did not testify that he knew how it was confected, its scale, or its deviation;

---

[46] United States v. Campbell, 935 F.2d 39, 45 (4th Cir. 1991).

[47] United States v. Panton, 846 F.2d 1335, 1337 (11th Cir. 1988).

[48] 72 F.3d 140, 142-44 (D.C. Cir. 1995).

[49] In Applewhite, precision was important because the distance from the school to the apartment building's address was already quite close to 1000 feet. See id.

[50] The D.C. Circuit has a line of cases on this issue. See, e.g., United States v. Harrison, 103 F.3d 986, 990 (D.C. Cir. 1997).

neither did he testify that he possessed any special knowledge, other than that possessed by all drivers, that could form the basis for an opinion about distances between objects on aerial photographs from merely driving a car from time to time in the vicinity. The jurors were therefore left with nothing but an aerial photograph without any indication of scale whatsoever.[51] Perhaps if McCall's house were next door to the school, an aerial photograph without scale could be sufficient evidence that they had to be within 1000 feet of each other. Surely, however, an unscaled aerial photograph is insufficient to determine whether McCall's clearly non-contiguous house was within 1000 feet of the school.

We need not decide today when, for all cases, an aerial photograph without scale is sufficient evidence that two places are within 1000 feet of each other. A reasonable juror cannot "guestimate" a distance beyond a reasonable doubt that is "around" two thirds of the way to the 1000-foot mark (an estimate of which we can take notice,[52] but, without the circle on the photograph, the jury could not). The 1000-foot mark is the point at which doubt is the greatest because the call is the closest. Absent some innate Cartesian concept of the sizes of houses or lots in neighborhoods in Odessa, its typical block measurements in feet, or something similar, a reasonable juror would have to entertain a reasonable doubt about a distance that is "about" two thirds of the distance at which uncertainty reaches its maximum and inflection point.[53]

---

[51] Recall that the circle, which ostensibly indicated a 1000-foot radius around Gale Pond Alamo Elementary School, was not admitted into evidence.

[52] We base this on the circle that the district court did not admit into evidence. If the government would have us accept that an aerial photograph without scale could ever allow a reasonable person to determine a distance beyond a reasonable doubt, something that we assume only arguendo, it must also concede that the actual distance between the two points is a necessary component of our reasonableness inquiry. In this case, the government can suffer no prejudice by our use of its evidence, admissible or not, for this inquiry, because it had the incentive under the Double Jeopardy Clause to put its strongest case forward at trial.

[53] The fact that the photograph, with the circle still on it, was shown to the jury heightens our concern that its conclusion about distance might have been based, at least in

(b)  Detective Nayola's Opinion

Because without the circle or some indication of scale and distance on it, the aerial photograph is useless, the jurors were left with only the non-expert opinion testimony of Detective Nayola.  Other than eliciting that he had driven the relevant streets "over 100 times," the government laid no foundation for Detective Nayola's lay opinion testimony that the house and school are within 1000 feet of each other.[54]  He did not testify that he had ever had an occasion to note the distance between Gale Pond Alamo Elementary and McCall's house (or any other distance between points in the neighborhood), or that he had ever "clocked" the distance on his odometer, or that he possessed a preternatural facility for instantaneously conjuring the distance between any two points in a neighborhood with anything approaching certainty.  Unsubstantiated lay opinion testimony based on nothing more than the casual experience of driving around a neighborhood does not suffice to allow a reasonable juror to conclude — beyond a reasonable doubt — that two properties are within 1000 feet of each other.  Some experience is not the same as sufficient evidence.[55]  As with the aerial photograph, a reasonable person would require more than a casual or unelaborated guess to determine any fact beyond a reasonable doubt.

large part, on the un-admitted circle.

[54]  Even though this is a question of the sufficiency of the evidence, and not whether Detective Nayola's lay opinion testimony was properly admitted, we have looked to the basis of an expert's opinion when we have examined the sufficiency of the evidence.  See Stevenson v. E.I. DuPont De Nemours & Co., 327 F.3d 400, 406 (5th Cir. 2003); see also In re Joint E. & S. Dist. Asbestos Litig., 52 F.3d 1124, 1132-33 (2d Cir. 1995).  There is even greater reason to do the same with lay opinion testimony, which is essentially just a convenient summary of facts that could otherwise have been adduced through factual testimony.  See United States v. Garcia, 413 F.3d 201, 211 (2d Cir. 2005) ("Rule 701 simply recognizes lay opinion as an acceptable 'shorthand' for the 'rendition of facts that the witness personally perceived.'" (quoting 4 WEINSTEIN'S FEDERAL EVIDENCE § 701.03(1) (2d ed. 2004)).

[55]  See, e.g., United States v. Ortega Reyna, 148 F.3d 540, 543 (5th Cir. 1998) (per curiam).

The myriad ways that the government easily and simply could have proved the static, objective fact of the distance between the elementary school and McCall's house unavoidably influences the content that we give to the concept of what a reasonable juror must see and hear to know a distance beyond a reasonable doubt. For example, the government could have offered testimony from a witness who measured the distance, or who could authenticate the circle as accurately superimposing a 1000-foot radius on the aerial photograph, or introduced a witness who knew how the aerial photograph was confected and knew its scale. Or, the government could have tendered, inter alia, a map with scale, or a certified copy of a public record of the distance, or an official publication of the distance. It also could have emulated the successful prosecutor in Sparks by having a qualified official testify. The circle, far more sufficient evidence of the distance, was excluded on the first day of a trial that continued for a second day; and the government did not rest until six more witnesses had testified. Yet at no point after its preferred method — the photo with the circle on it — was excluded, did the government bother to seek leave to obtain and offer probative evidence of the distance; and nothing in the record reveals an impediment to it having done so.

We have no choice but to reverse McCall's convictions for violating § 860 and to remand with instructions for the district court to enter a judgment of acquittal on the § 860 counts and to re-sentence McCall accordingly. Lest there be any future question, we make clear today that the Double Jeopardy Clause bars retrial of McCall on the § 860 counts.

ii.     Sufficiency of the Remainder of the Evidence

McCall's complaints about the sufficiency of the evidence that he distributed 50 or more grams of crack to Williams are based on concerns that, except in extraordinary cases, we commit to the jury's singular competence. He claims that Williams's interest in helping her husband rendered her testimony

too unreliable. He points to contradictions in it and to her unusual behavior in expressing remorse to the judge for her testimony. He highlights Williams's ability to hide drugs on her person in a manner that would not have been detected by the pat-down searches conducted prior to her controlled buys. He notes that Williams was briefly out of view of the OPD officers who were conducting surveillance of her drive from the police station to McCall's house and from McCall's house to the place of her post-buy meeting with the officers. He observes that drugs were found in Williams's car before the first controlled buy, yet Williams was not arrested. We may accept all of this as true, but to conclude that the evidence was not insufficient, we need only quote from United States v. Brookins, another case that involved controlled buys substantially similar to those here:

> Brookins argues that the testimony of the confidential informant was not at all credible, because the informant is an admitted drug user and was being paid by the Government for his assistance in the effort to arrest and convict Brookins. This argument is not properly raised before this Court; it is axiomatic that it is the jury, and not the court, which is to weigh the credibility of witnesses and decide who to believe. Brookins was entitled to present to the jury all of his evidence impeaching the informant's credibility (which he did), and the jury was entitled to weigh that evidence as it saw fit. In any case, it is clear that even without the testimony of the informant, the tape recording and testimony of the FBI agents would have been enough to sustain Brookins' convictions.[56]

Able counsel for McCall extensively cross-examined Williams on the veracity of her account and highlighted other possible explanations of how Williams came to hand over crack to the OPD officers with whom she met on both occasions after leaving McCall's house. But in the end, the jury believed Williams and the government's other witnesses. That settles the matter for this

---

[56] 919 F.2d 281, 284 (5th Cir. 1990) (internal citation omitted).

case in the absence of findings of incredibility as a matter of law or the like. McCall has pointed us to nothing that would so qualify.

## III. CONCLUSION

For the foregoing reasons, we REVERSE McCall's convictions under § 860 and REMAND for entry of a judgment of acquittal on the § 860 counts and for re-sentencing on his convictions for violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), which convictions we AFFIRM.

GALE POND ALAMO/1000 FT BUFFER

916 E. Patton

Gale Pond Alamo