# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 29, 2024

Lyle W. Cayce
Clerk

No. 23-20021

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

HAKEEM ALEXANDER COLES,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CR-58-1

Before JONES, CLEMENT, and WILSON, *Circuit Judges*.

PER CURIAM:[*]

Hakeem Coles was tried for Hobbs Act robbery and knowingly discharging a firearm during a crime of violence for actions committed at a nightclub in Houston, Texas. During trial, the Government, over Coles's objections, introduced video evidence and testimony pursuant to Federal Rule of Evidence 404(b) related to a robbery Coles committed in Minneapolis, Minnesota, three weeks before the Houston robbery. The jury

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 23-20021

convicted Coles on both counts. The district court sentenced him to 480 months' imprisonment after applying a career offender enhancement pursuant to U.S.S.G. § 41B.1(a). Coles now contends that the district court abused its discretion in admitting the evidence and plainly erred by applying the career offender enhancement. We affirm.

## I.

Coles worked as a security guard at a Minnesota bar and restaurant, Cowboy Jack's, for about two weeks in August 2019 before he was fired. Around 9:00 a.m. the day after being terminated, Coles returned to Cowboy Jack's prior to opening time under the guise of looking for his cell phone. Sarah Baker, a Cowboy Jack's employee, allowed Coles inside. When they went into the management office, Coles closed the door, pulled a shotgun from under his trench coat, cocked it, and ordered Baker to fill a backpack with money from the safe. Coles ordered Baker to kneel on the ground and used a phone cord to restrain her. When Baker turned towards Coles, he struck her in the back of the head, "kind of knock[ing] [Baker] out." While Baker laid on the ground, Coles fled. A security camera captured the whole robbery.

Less than a month later, on September 7, 2019, a security guard employed by Clé Nightclub in Houston robbed Clé. The robber entered the Clé management office around 2:00 a.m. and asked to retrieve his briefcase he left there earlier. He introduced himself as "Wyatt" to Breanna Wilson, Clé's assistant general manager, retrieved the briefcase, briefly exited, and returned moments later to request change for a $100 bill. "Wyatt" then pulled out a gun, cocked it, and ordered Wilson and Michael Wheatley, who was also in the office, to fill the briefcase with money, telling them that they could "consider [themselves] dead" if they did not put in at least $20,000.

After about two minutes, Jonathan Hellard, a Clé bartender, entered the office. "Wyatt" said, "excuse me," to Hellard and exited. Hellard paused for a moment before realizing that Clé had been robbed and then chased the robber out Clé's back door. The robber jumped into the driver's side of a vehicle, lowered the passenger's window, fired a bullet at Hellard, and drove away. An inconclusive analysis of the bullet later determined that it could have been fired from a .40 caliber handgun. Cle's surveillance system recorded the robbery.

Harris County Deputy Sheriff Broderick Green worked for Clé at night but had left a few hours prior to the robbery. Green returned to Clé after the robbery, wrote a report, and obtained an arrest warrant for "Cordale Glover," the name on the Minnesota Identification Card the robber had presented to Clé when he applied for the security guard position and interviewed with Wheatley.

On September 17, 2019, Officer Shayne LeRouge pulled over a car driven by Coles in Gretna, Louisiana. LeRouge asked Coles to exit the vehicle after LeRouge smelled marihuana. Coles told LeRouge his name was "Wyatt Glover." Upon searching the vehicle, LeRouge found a bag of marihuana and a .40 caliber pistol and ammunition, and a Minnesota Identification Card bearing the name "Cordale Glover." LeRouge noticed that Coles did not match the height, weight, or photograph on the identification card.

LeRouge transported Coles to a local police station. Coles refused to identify himself at the police station, even asserting that he was Jamaican. When Coles began speaking with a Jamaican accent during the interrogation, LeRouge contacted Immigration and Customs Enforcement, who identified Coles through a fingerprint analysis.

No. 23-20021

The day after LeRouge arrested Coles in Louisiana, FBI Agent Keith March took over the Clé robbery investigation, focusing on Cordale Glover as a suspect. At the time of the Clé robbery, Glover lived in White Park, Minnesota. March analyzed cell site data of Glover's phone number and determined that during the Clé robbery, Glover's cell phone was near Minneapolis rather than Houston. Based on this information, Harris County dismissed the charges against Glover.

Because of the Louisiana arrest, March's investigation then turned to Coles. March created a photo spread that included Coles, but not Glover. Several witnesses identified Coles as the Clé robber after reviewing the spread. In January 2020, Coles was charged with aiding and abetting interference with commerce by robbery in violation of 18 U.S.C. §§ 2 and 1951(a), and aiding and abetting, carrying, brandishing, and discharge of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(iii). Prior to trial, the Government notified Coles and the court that it might seek to admit Coles's prior offenses, including the Cowboy Jack's robbery, in accord with Federal Rules of Evidence 404(b) and 609.

At trial, multiple witnesses identified Coles as the Clé robber. March and Green testified that, despite Green's initial belief that Glover was the robber, March's more thorough investigation correctly concluded that Glover could not have been the robber. And Glover testified that during the Clé robbery he was in Minnesota at his son's birthday party. He also identified his Minnesota Identification Card, which Coles possessed during the Louisiana traffic stop, and which the Clé robber used to gain employment. Glover stated that he lost the card sometime in 2018 or 2019. He testified that his wife introduced Coles to Glover in 2018, and Coles visited Glover's house for family events while Coles lived in Minnesota.

4

Coles's defense rested on misidentification.  Other than Deputy Green, the defense called a psychologist, who testified as an expert as to perceived flaws in the Government's identification procedures, problems with misidentification in cases involving firearms, and difficulties with cross–racial identifications.

To refute Coles's misidentification defense, the Government sought, over objection, to call Baker to testify regarding the Cowboy Jack's robbery and to introduce security camera footage of that robbery.  The court permitted the evidence, concluding that "[t]he [G]overnment [gave] appropriate notice to [Coles] of the expectation to offer 404(b) evidence on this question of identity . . . [and] that identity has been the central focal point of the defense."  The court enumerated various similarities between the robberies:  Coles was an employee of both establishments, used a weapon, and the robberies took place in the establishments' offices "with people that [Coles] knew."  The court was unmoved that the use of the pseudonym "Cordale Glover" during the Clé robbery defeated evidence of a modus operandi because "at the time [Coles] was a fugitive from Minneapolis on the prior offense, which explains the use of his alias at the time he took employment . . . ."  And the court found that Federal Rule of Evidence 403 did not bar the evidence; because of the "vigorous and persistent defense being waged, that this is a mistaken identity [case]," the probative value outweighed "any unfair prejudice or undue prejudice that might be inflicted upon the defendant from permitting that evidence."

Ultimately, Baker testified about the timeline of the Cowboy Jack's robbery and that Coles hit her over the head, and the Government also played the Cowboy Jack's video footage.  Before playing the video, the court gave a limiting instruction to the jury admonishing them that the video was admitted "for a very limited purpose . . . [to] be considered by [the jury] in determining identity . . . ."

No. 23-20021

During closing, the Government re-played videos of the Clé and Cowboy Jack's robberies and compared them. The defense countered that Glover committed the Clé robbery and that the witnesses to the contrary were not credible. The jury convicted Coles on both counts.

The district court sentenced Coles to forty years of imprisonment, consecutive with a seventeen-year sentence for the Cowboy Jack's robbery in the District of Minnesota.[1] The court concluded that Coles qualified for a career offender enhancement under U.S.S.G. § 4B1.1(a) after determining that the instant Hobbs Act robbery and two of his prior felony convictions constituted crimes of violence. Though Coles objected to the district court's application of the enhancement, he concedes that "he did not argue that aiding and abetting Hobbs Act robbery was not a crime of violence under the Guidelines."

Coles now appeals, challenging both his convictions and his sentence.

## II.

Coles raises two issues. He contends that (A) the district court abused its discretion in admitting evidence of the Cowboy Jack's robbery, particularly the video of the robbery and Baker's testimony; and (B) the district court plainly erred in sentencing him as a career offender because Hobbs Act robbery, under then-effective Sentencing Guidelines, did not constitute a crime of violence.

---

[1] The district court also considered sentences from several convictions in other jurisdictions and ordered Coles's sentence here to run consecutively or concurrently with those.

No. 23-20021

## A.

"Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). But it "may be admissible for another purpose, such as proving . . . identity[.]" FED. R. EVID. 404(b)(2). "We review a preserved objection to a trial court's evidentiary ruling under an abuse of discretion standard." *United States v. Meyer*, 63 F.4th 1024, 1040 (5th Cir. 2007). "This standard is 'heightened' when the evidence is admitted pursuant to Rule 404(b) 'because evidence in criminal trials must be strictly relevant to the particular offense charged.'" *Id.* (quoting *United States v. Smith*, 804 F.3d 724, 735 (5th Cir. 2015)). Yet, "Rule 404(b) only excludes evidence of other crimes when offered to prove the conduct of a person by resort to an inference as to his character." *United States v. Ebron*, 683 F.3d 105, 131–32 (5th Cir. 2012) (quoting WRIGHT & GRAHAM, FED. PRAC. & PRO: EVID. § 5248).

Determining whether evidence is admissible under Rule 404(b) "requires a two-prong determination that '(1) [the evidence] is relevant to an issue other than the defendant's character, and [that] (2) it "possess[es] probative value that is not substantially outweighed by its undue prejudice" under Federal Rule of Evidence 403.'" *Meyer*, 63 F.4th at 1040 (alterations in original) (citing *Smith*, 804 F.3d at 735). Under prong one, we ask "whether the evidence has 'any tendency to make a fact more or less probable than it would be without the evidence' and 'the fact is of consequence in determining the action.'" *United States v. Kinchen*, 729 F.3d 466, 472 (5th Cir. 2013) (quoting FED. R. EVID. 401)). "[E]xtraneous-acts evidence offered to prove identity is admissible in the Fifth Circuit only if the circumstances of the extraneous act were so similar to the offense in question that they evince a signature quality—marking the extraneous act as 'the handiwork of the accused.'" *United States v. Sanchez*, 988 F.2d 1384, 1393

(5th Cir. 1993) (quoting *United States v. Beechum*, 582 F.2d 898, 912 n.15 (5th Cir. 1978) (en banc)).  "Indeed, proper identity evidence is tantamount to modus operandi evidence."  *Id.* at 1393–94.

When assessing the evidence under prong two, we are guided by Rule 403 and consider several factors:  "(1) the [G]overnment's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions."  *United States v. Juarez*, 866 F.3d 622, 627 (5th Cir. 2017) (internal quotations and citation omitted).  "In addition, we consider the overall prejudicial effect of the extrinsic evidence."  *Id.* (citing *Beechum*, 582 F.2d at 917).

Coles contends that the evidence fails under both prongs.  We disagree.

### 1.  Modus Operandi Evidence

The district court did not abuse its discretion in determining that Baker's testimony and the Cowboy Jack's robbery footage were proper modus operandi evidence.  Coles attempts to distinguish the two robberies, but his distinctions miss the mark.  For instance, Coles proffers that the Cowboy Jack's robbery occurred at a "restaurant and bar," rather than a "nightclub"; at 9:00 a.m., rather than 2:00 a.m.; lasted five minutes, rather than two minutes; and Coles restrained Baker at Cowboy Jack's.[2]  Coles contends that these circumstances signal that the Cowboy Jack's heist was a dissimilar, "generic" robbery.

---

[2] Coles also turns to *United States v. Ricard*, 922 F.3d 639 (5th Cir. 2019), to urge that an offense committed during a defendant's employment is not a "signature" sufficient for modus operandi evidence.  But "[i]dentity . . . was never at issue in [*Ricard*]."  *Id.* at 654, n. 12.  Here, the defense concedes that the case turned on the robber's identity.

No. 23-20021

But Coles's putative differences do not dispel the shared distinctive qualities of the Cowboy Jack's and Clé robberies, which "evince a signature quality" as to both, not mere "generic" crimes. *Sanchez*, 988 F.2d at 1393; *cf. United States v. Myers*, 550 F.2d 1036, 1046 (5th Cir. 1977) (discussing whether evidence of a subsequent robbery was admissible to show that one of two robbers committed an earlier robbery). Both Cowboy Jack's and Clé were robbed by their unmasked security guards, who recently (and only briefly) worked at each establishment, by pointing a gun at the victims. The robberies occurred less than a month apart, while the establishments were closed to patrons, in back offices behind closed doors,[3] after the perpetrator invented reasons to return to the premises. And Coles's use of his real name at Cowboy Jack's does not negate the modus operandi; if anything, his using an alias when seeking employment at Clé *facilitated* the crime there, lest he would have been found out for the Cowboy Jack's robbery from the get-go. In sum, Baker's testimony and the video footage of the Cowboy Jack's robbery tend to "mark[] the extraneous act as 'the handiwork of the accused.'" *Sanchez*, 988 F.2d at 1393 (citation omitted).

## 2. Probative Value Outweighs Prejudice

The probative value of both Baker's testimony and the video footage of the Cowboy Jack's robbery also outweighed any prejudice. Each of our four factors supports the district court's decision to allow the prosecution to introduce the evidence.

First, "the [G]overnment's need for the extrinsic evidence" to show identity is clear. *Juarez*, 866 F.3d at 627. Coles squarely put identity of the robber front and center by attacking Green's and March's investigations;

---

[3] Coles contends the robber did not close the door during the Cowboy Jack's robbery, but the video refutes this, even if the door was slightly ajar.

arguing that ballistic evidence was inconclusive; contending the FBI erred in omitting Glover in the photo arrays; highlighting that Coles's DNA was not on the pistol; and urging that the "FBI cleared Glover of suspicion based on remarkably little investigation." The defense called an expert witness to articulate a defense theory of misidentification, and defense counsel attacked the Government's witnesses' credibility during closing. Juxtaposed against the defense's full-throated assertion that Coles did not commit the Clé robbery, the probative value of the Cowboy Jack's evidence is apparent.

Second, as discussed previously, the district court did not err in finding that "the similarity between the extrinsic and charged offenses" was sufficient to constitute modus operandi evidence. And "the amount of time separating the two offenses" was less than a month, reinforcing the similar nature of the crimes. Finally, the district court correctly gave a fulsome limiting instruction prior to playing the video evidence for the jury. *Juarez*, 866 F.3d at 627.

In toto, the "overall prejudicial effect of the extrinsic evidence" related to the Cowboy Jack's robbery—even the video of Coles striking Baker—does not substantially outweigh its high probative value. *Id.* By contrast, this court has discerned abuse of discretion only in limited circumstances in which district courts have admitted "other acts" evidence that was "highly prejudicial" compared to the crimes charged. *See, e.g.*, *United States v. Fortenberry*, 860 F.2d 628, 630 (5th Cir. 1988) (reversing conviction because prosecution admitted evidence of other acts that were "of a magnitude far greater than the charged offenses").[4] Coles's contention

---

[4] Coles cites additional cases to contend that the prejudicial value of the Cowboy Jack's evidence outweighs its probative value, but they are unavailing. In *United States v. Shavers*, this court reversed admission of extrinsic offense evidence because there was "doubt as to whether the extrinsic offense was actually committed, thus reducing any probative value." 615 F.2d 266, 271 (5th Cir. 1980). Here, Coles admits he committed the

No. 23-20021

that the Cowboy Jack's robbery was more violent than the Clé robbery because the Clé robber merely fired a single shot during flight—that fortunately missed Hellard—does not work to shoehorn this case with those in which we have found reversible error. Thus, even under our heightened abuse of discretion standard, the district court did not err in admitting the evidence pursuant to Rule 404(b).[5]

## B.

We next address whether the district court erred in finding that Coles was a "career offender" pursuant to U.S.S.G. § 4B1.1(a), thus increasing the Guidelines range for his sentence. This issue hinges on whether Hobbs Act robbery—one of Coles's instant offenses—was a "crime of violence" under then-operative Guidelines, specifically the 2016 version of U.S.S.G. § 4B1.2.[6] "As [Coles] concedes, he did not preserve" his crime of violence argument in the district court, so "our review is for plain error only." *United States v. Jones*, 88 F.4th 571, 572 (5th Cir. 2023). To establish plain error, a defendant

---

Cowboy Jack's robbery. In *United States v. Grimes*, this court reversed the admission of "vile," "graphic," and "violent" narratives that described torturing children, which differed from the types of child pornography possessed by the defendant. 244 F.3d 375, 385 (5th Cir. 2001). Here, the video showing Coles striking Baker does not come close to the prejudicial impact at issue in *Grimes*.

[5] Erroneous admissions under Rule 404(b) are also subject to harmless error inquiry. *United States v. McCall*, 553 F.3d 821, 827 (5th Cir. 2008). We do not reach this issue because we discern no abuse of discretion in admitting the evidence.

[6] We interpret and apply the Sentencing Guidelines as they existed at the time Coles committed the criminal acts charged. *United States v. Martinez-Ovalle*, 956 F.3d 289, 292 (5th Cir. 2020) ("An ex post facto violation occurs when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense." (quotation marks and citation omitted)). Thus, we review Coles's claim using the Guidelines' 2016 Amendments, rather than the current 2023 Amendments.

bears the burden of showing a clear or obvious error that affected the defendant's substantial rights. *Id.* Coles fails to hurdle this burden.

Our circuit has not determined whether Hobbs Act robbery constituted a crime of violence under the operative version of § 4B1.1(a). "In this circuit, a lack of binding authority is often dispositive in the plain error context." *United States v. McGavitt*, 28 F.4th 571, 577 (5th Cir. 2022) (collecting cases) (quotation marks omitted); *see also United States v. Sanches*, 86 F.4th 680, 688 (5th Cir. 2023) (finding a district court did not plainly err when there was neither binding precedent nor clear caselaw on whether 18 U.S.C. § 922(a)(6) was unconstitutional).

Coles nonetheless urges that "a robust consensus" among eight of our sister circuits supports his contention, and "in this circuit it is not necessary for an issue to have been decided in a binding, published decision to make an error plain." True enough, other circuits have held that a Hobbs Act robbery was not a crime of violence under the operative version of the Sentencing Guidelines. However, only the Third and Fourth Circuits have concluded that holding otherwise rose to the level of plain error. *See United States v. Scott*, 14 F.4th 190, 194–200 (3d Cir. 2021); *United States v. Green*, 996 F.3d 176, 179 (4th Cir. 2021). And under the surface, the consensus among circuits is not as robust as Coles argues. With great respect for our colleagues, we disagree with those circuits and instead find Judge Phipps' dissenting rationale in *Scott* persuasive. *See* 14 F.4th at 200–04 (Phipps, J., dissenting).

In particular, Coles cannot show any "plain" or "obvious" error because whether an offense constitutes a crime of violence under the "categorical approach" is hardly an obvious proposition. *See id.* (thoroughly discussing why it is not "obvious" that Hobbs Act robbery is not a crime of violence and collecting cases discussing difficulty in applying the categorical

approach); *see also United States v. Garner*, 28 F.4th 678, 681 (5th Cir. 2022) (outlining the categorical approach). The Sentencing Commission itself noted in its 2023 Amendments that "recent decisions holding that Hobbs Act robbery [was] not a crime of violence . . . [were] an unintended consequence of the 2016 amendment . . . ." The Commission's analysis of recent cases "found that the Hobbs Act robberies overwhelmingly involved violence." U.S.S.G. Supp. to Appendix C, Amend. 822, Reason for Amendment, p. 247 (Nov. 1, 2023). Having no binding circuit precedent on the matter, and in view of the difficulty with which other courts and the Sentencing Commission itself have grappled with the question, we conclude that the district court did not plainly err in the context of this case. Thus, Coles fails to meet his burden to show that the district court reversibly erred in applying the career offender enhancement to his sentence based in part on his conviction for Hobbs Act robbery.

## III.

The district court did not abuse its discretion in admitting evidence of the Cowboy Jack's robbery under Rule 404(b) during Coles's trial. Nor did the district court plainly err in applying the career offender sentencing enhancement. Accordingly, Coles's convictions and resulting sentence are

AFFIRMED.